**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEMINI TRUST COMPANY, LLC,<br><br>                              *Plaintiff*,<br><br>              v.<br><br>DIGITAL CURRENCY GROUP, INC.<br>and BARRY SILBERT,<br><br>                              *Defendants*. | Case No. 1:23-cv-06864-LJL [rel. 23-2027]<br><br>Hon. Lewis J. Liman<br><br>ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE COMPLAINT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Counsel for Defendants Digital Currency Group,*
*Inc. and Barry Silbert*

August 10, 2023

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ...................................................................................4

    A.    Gemini and Genesis ................................................................4

    B.    Three Arrows Capital ...............................................................5

    C.    Genesis's Financial Condition Following 3AC's Demise ...................5

    D.    Genesis's Bankruptcy and Resulting Lawsuits ...........................7

LEGAL STANDARD.........................................................................................8

ARGUMENT ...................................................................................................8

    I.    GEMINI FAILS TO ADEQUATELY AND PARTICULARLY ALLEGE
FRAUD BY DEFENDANTS .........................................................9

        A.    Gemini Fails to Plead Any Actionable Misrepresentations by
Defendants ...................................................................9

            1.    None of the Statements by Defendants Are Actionable .......9

            2.    Defendants Are Not Liable for Alleged Misrepresentations by
Genesis ...............................................................11

        B.    Gemini Fails to Plead Knowledge .....................................13

        C.    Gemini Fails to Plead a Strong Inference of Scienter....................14

        D.    Gemini Fails to Plead Reasonable Reliance ............................16

        E.    Gemini Fails to Plead Actionable Damages ............................17

        F.    Gemini's Conspiracy Theory Fails .....................................18

    II.    GEMINI FAILS TO PLEAD AIDING AND ABETTING FRAUD WITH
PARTICULARITY .................................................................20

        A.    Gemini Fails to Plead Actual Knowledge of Fraud .....................21

        B.    Gemini Fails to Plead Substantial Assistance ..........................22

            1.    Gemini Fails to Allege That Defendants Affirmatively Assisted
in Any Fraud .........................................................22

            2.    Gemini Fails to Plead That Defendants Proximately Caused Its
Injuries .............................................................24

CONCLUSION.................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Afra v. Zamir*,
   76 A.D. 3d 56 (N.Y. App. Div. 2010), *aff'd*, 17 N.Y.3d 737 (2011) .....................................17

*AHW Inv. P'ship v. Citigroup Inc.*,
   980 F. Supp. 2d 510 (S.D.N.Y. 2013), *aff'd*, 661 F. App'x 2 (2d Cir. 2016)........................18

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................................................8

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007).....................................................................................................4

*Bayshore Cap. Advisors, LLC, v. Creative Wealth Media Fin. Corp.*,
   2023 WL 2751049 (S.D.N.Y. Mar. 31, 2023) .......................................................................25

*Beck v. Consol. Rail Corp.*,
   394 F. Supp. 2d 632 (S.D.N.Y. 2005)..............................................................................11, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................................8, 19

*Berdeaux v. OneCoin Ltd.*,
   561 F. Supp. 3d 379 (S.D.N.Y. 2021).............................................................................21, 22

*Brass v. Am. Film Techs., Inc.*,
   987 F.2d (2d Cir. 1993)........................................................................................................12

*Briarpatch Ltd., L.P. v. Geisler Roiberdeau, Inc.*,
   2007 WL 1040809 (S.D.N.Y. Apr. 4, 2007), *aff'd sub nom. Briarpatch Ltd.*
   *LP v. Phx. Pictures, Inc.*, 312 F. App'x 433 (2d Cir. 2009) ..................................................19

*Brock Cap. Grp. LLC v. Siddiqui*,
   2022 WL 2047589 (S.D.N.Y. June 7, 2022) .........................................................................17

*Chemtex, LLC v. St. Anthony Enters., Inc.*,
   490 F. Supp. 2d 536 (S.D.N.Y. 2007).......................................................................21, 23, 24

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996)..................................................................................................15

*Cohen v. Stevanovich*,
   722 F. Supp. 2d 416 (S.D.N.Y. 2010)...................................................................................15

*Crigger v. Fahnestock & Co.*,
   443 F.3d 230 (2d Cir. 2006)............................................................................9

*Defer LP v. Raymond James Fin., Inc.*,
   654 F. Supp. 2d 204 (S.D.N.Y. 2009).............................................................15

*DeGraziano v. Verizon Commc'ns, Inc.*,
   325 F. Supp. 2d 238 (E.D.N.Y. 2004) ...........................................................12

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003)........................................................................................11

*In re Duane Reade Inc. Sec. Litig.*,
   2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003), *aff'd sub nom. Nadoff v.
   Duane Reade, Inc.*, 107 F. App'x 250 (2d Cir. 2004)................................13, 14

*Filler v. Hanvit Bank*,
   156 F. App'x 413 (2d Cir. 2005) ...............................................................20, 23

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004).............................................................................14

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
   479 F. Supp. 2d 349 (S.D.N.Y. 2007)..............................................................25

*In re Fyre Festival Litig.*,
   399 F. Supp. 3d 203 (S.D.N.Y. 2019)..............................................10, 11, 12, 13

*Geoffrey A. Orley Revocable Tr. v. Genovese*,
   2020 WL 611506 (S.D.N.Y. Feb. 7, 2020).......................................................20

*Harborview Value Masterfund, L.P. v. Freeline Sports, Inc.*,
   2012 WL 612358 (S.D.N.Y. Feb. 23, 2012)......................................................14

*Harris v. AmTrust Fin. Servs., Inc.*,
   135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016)...........................4

*Heinert v. Bank of Am. N.A.*,
   835 F. App'x 627 (2d Cir. 2020) .....................................................................19

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010)............................................................................................18

*IKB Int'l S.A. v. Bank of Am. Corp.*,
   584 F. App'x 26 (2d Cir. 2014) .......................................................................14

*JP Morgan Chase Bank v. Winnick*,
   406 F. Supp. 2d 247 (S.D.N.Y. 2005).........................................................23, 24

*Kelly v. Beliv LLC*,
    2022 WL 16836985 (S.D.N.Y. Nov. 9, 2022) ......................................................................16

*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009) ...............................................................................22

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014) ..............................................................................................21

*Kush v. City of Buffalo*,
    59 N.Y.2d 26 (1983) ..........................................................................................................18

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011) ................................................................................................8

*LeFebvre v. N.Y. Life Ins. & Annuity Corp.*,
    214 A.D.2d 911 (N.Y. App. Div. 1995) ........................................................................19, 20

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ...........................................................................8, 12, 16, 21, 24

*Meisel v. Grunberg*,
    651 F. Supp. 2d 98 (S.D.N.Y. 2009) .................................................................................20

*Kirschner ex rel. Millennium Lender Claim Tr. v. J.P. Morgan Chase Bank, N.A.*,
    2020 WL 9815174 (S.D.N.Y. Dec. 1, 2020) ................................................................11, 12

*Morin v. Trupin*,
    711 F. Supp. 97 (S.D.N.Y. 1989) .................................................................................23, 24

*Nat'l Westminster Bank USA v. Weksel*,
    124 A.D.2d 144 (N.Y. App. Div. 1987) .............................................................................21

*Pasternack v. Lab'y Corp. of Am. Holdings*,
    27 N.Y.3d 817 (2016) ........................................................................................................10

*In re Platinum-Beechwood Litig.*,
    426 F. Supp. 3d 14 (S.D.N.Y. 2019) .................................................................................19

*In re Refco Inc. Sec. Litig.*,
    2010 WL 11500542 (S.D.N.Y. Oct. 22, 2010) ..................................................................10

*Ritchie Cap. Mgmt., LLC v. Gen. Elec. Cap. Corp.*,
    121 F. Supp. 3d 321 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 249 (2d Cir. 2016) ......................19

*Ryan v. Hunton & Williams*,
    2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) ..................................................................21

*Saltz v. First Frontier, LP*,
    782 F. Supp. 2d 61 (S.D.N.Y. 2010), *aff'd*, 485 F. App'x 461 (2d Cir. 2012)................15, 16

*Sec. Inv'r Prot. Corp. v. BDO Seidman, LLP*,
    222 F.3d 63 (2d Cir. 2000).......................................................................................10

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    33 F. Supp. 3d 401 (S.D.N.Y. 2014)........................................................................14

*SPV OSUS Ltd. v. AIA LLC*,
    2016 WL 3039192 (S.D.N.Y. May 24, 2016), *aff'd sub nom. SPV Osus Ltd. v.*
    *UBS AG*, 882 F.3d 333 (2d Cir. 2018)...............................................................24, 25

*SPV Osus Ltd. v. UBS AG*,
    882 F.3d 333 (2d Cir. 2018)....................................................................................25

*Starr Found. v. Am. Int'l Grp., Inc.*,
    76 A.D.3d 25 (N.Y. App. Div. 2010) ................................................................17, 18

*Tellez v. OTG Interactive, LLC*,
    2016 WL 5376214 (S.D.N.Y. Sept. 26, 2016).........................................................13

*Terra Secs. Asa Konkursbo v. Citigroup, Inc.*,
    740 F. Supp. 2d 441 (S.D.N.Y. 2010), *aff'd*, 450 F. App'x 32 (2d Cir. 2011)................16, 17

*Tradeshift, Inc. v. Smucker Servs. Co.*,
    2021 WL 4463109 (S.D.N.Y. Sept. 29, 2021).........................................................13

*Valentini v. Citigroup, Inc.*,
    837 F. Supp. 2d 304 (S.D.N.Y. 2011)......................................................................15

*Warren v. Coca-Cola Co.*,
    2023 WL 3055196 (S.D.N.Y. Apr. 21, 2023)...........................................................15

*Woori Bank v. RBS Secs., Inc.*,
    910 F. Supp. 2d 697 (S.D.N.Y. 2012)......................................................................11

*Yencho v. Chase Home Fin. LLC*,
    2015 WL 127721 (S.D.N.Y. Jan. 8, 2015) ..............................................................10

*Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*,
    2011 WL 5962804 (N.Y. Sup. Ct. Apr. 15, 2011)......................................................9

**Rules**

Fed. R. Civ. P. 8 .................................................................................................................1

Fed. R. Civ. P. 9(b) ...............................................................................................1, 2, 8, 16, 20

Fed. R. Civ. P. 12(b)(6) .......................................................................................................1, 8

Defendants Digital Currency Group, Inc. ("DCG") and Barry Silbert ("Silbert," and collectively, "Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss the Complaint ("Complaint"), under Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Gemini Trust Company, LLC ("Gemini") brings allegations of fraudulent misrepresentations related to the Gemini Earn program, formerly operated by Gemini in coordination with Genesis Global Capital, LLC ("Genesis"). Yet Genesis is not a defendant here. It filed for bankruptcy on January 19, 2023, leaving Gemini—which created and promoted the Gemini Earn program—with irate customers. Gemini and its principals—Cameron and Tyler Winklevoss—thereafter began an effort to deflect blame by contriving a public, Twitter-based character assassination campaign against Defendants DCG (Genesis's indirect parent) and Silbert (DCG's founder)—neither of whom operated or oversaw the Gemini Earn program. These tweets were personal, vicious, and false, accusing Silbert of "foster[ing] and architect[ing] a culture of lies and deceit" and describing a letter by Silbert as "another piece of carefully crafted stupidity."[1] This Complaint is a continuation of that public relations campaign.

Through the Gemini Earn program, Gemini actively encouraged its existing customers to lend their digital assets (including cryptocurrency) to Genesis in exchange for interest, representing to its customers that it was a sophisticated market participant and that it had thoroughly vetted Genesis. Each Gemini customer who wished to participate in the Gemini Earn program executed

---

[1] @Cameron, TWITTER (July 3, 2023 8:27PM), https://twitter.com/cameron/status/1676024844641550337; *see also* @Cameron, TWITTER (Jan. 2, 2023 9:02AM), https://twitter.com/cameron/status/1609913051427524608 (claiming that Barry Silbert is "hid[ing] in [his] ivory tower" and using his background "as a bankruptcy restructuring associate" to take "the money of schoolteachers").

a Master Loan Agreement ("MLA") among the customer (as the lender), Genesis (as the borrower), and Gemini (as custodian and authorized agent for the customer).  Ex. A ("MLA") § XXV.[2]

Notably absent from this arrangement is any participation by Defendants.  That is because Defendants had virtually nothing to do with the Gemini Earn program—with its inception, with Gemini's promotion of the program to its customers, or with its ongoing operation.  Indeed, the MLA provided that "none of Genesis' parents or affiliates shall have any liability under this Agreement nor do such related entities guarantee any of Genesis' obligations under this Agreement."  MLA § XVII.  The parties further agreed that "any and all claims and liabilities against Genesis arising in any way out of this Agreement are only the obligation of Genesis, and not any of its parents or affiliates, including but not limited to Digital Currency Group, Inc." *Id.* § XVII.

In its 33 pages and 120 paragraphs of sensational claims, Gemini identifies just *one* representation made by Defendants to Gemini, allegedly at a lunch between Silbert and Cameron Winklevoss.  As to that single representation, Gemini does not explain why it supposedly was fraudulent (much less with the particularity demanded by Rule 9(b)).  The rest of the Complaint is a hodgepodge of conclusory allegations against non-defendant Genesis, all belied by the fact that Gemini has not filed these spectacular claims in the Genesis bankruptcy, as it surely would have had there been any good-faith basis for them.  In either event, these allegations against Genesis have no legal bearing on the claims against the actual Defendants in this case.

Gemini tries in various ways to hold Defendants responsible for alleged misrepresentations by Genesis, but Gemini's efforts to impute them to Defendants fail as a matter of law.  It is a settled principle of law that parents are not liable for the conduct of their subsidiaries, and Gemini does

---

[2] Citations to "Ex. _" refer to exhibits appended to the accompanying Declaration of Caroline Hickey Zalka, dated August 10, 2023.

not even try to allege any theory of alter ego.  Instead, it asserts that Defendants are liable for not affirmatively correcting the alleged misstatements of Genesis.  That is not the law, and if it were, every parent would be liable for every public representation made by its subsidiary.  Defendants owed no duty to Gemini to correct the allegedly false misstatements of another.

This theory of liability suffers from a host of other defects.  Gemini fails to offer anything beyond bare, conclusory assertions of knowledge and scienter by Defendants, both of which are independent (and demanding) elements of fraud.  It fails to allege that any reliance on Genesis's alleged representations regarding its financial condition was reasonable, and fails to draw any cogent connection between Genesis's representations and the unspecified *third-party* lawsuits that form the sole basis for its claim of injury.  Gemini's fallback theory of conspiracy liability is similarly deficient, because Gemini fails to adequately allege the most essential elements of that claim—the existence of an unlawful agreement and actual knowledge of the fraud.

In the alternative, Gemini argues that Defendants aided and abetted Genesis's alleged fraud through various corporate transactions and paperwork.  This effort fares no better.  There are no well-pled allegations that Defendants had actual knowledge of any alleged fraud, and Gemini does no more than rely on Defendants' corporate relationship with Genesis to argue otherwise.  Once again, that effort runs squarely into the settled law prohibiting plaintiffs from equating subsidiaries with their parents.  Nor can Gemini allege any substantial assistance by Defendants.  Here too, Gemini invents conclusory claims that a promissory note issued by DCG to Genesis was fraudulent, even though it has filed no such claims in the bankruptcy proceeding.

At bottom, this lawsuit is an attempt by Gemini to smear Defendants—who did not operate the Gemini Earn program—with claims it has not even filed in the Genesis bankruptcy proceeding. It fails as a matter of law for the numerous reasons set forth below.

## STATEMENT OF FACTS[3]

### A.   Gemini and Genesis

This action concerns a digital-asset lending arrangement between Gemini and Genesis (not DCG).  Prior to its bankruptcy in January 2023, Genesis's business consisted of borrowing digital assets from others and relending those assets to third parties at higher interest rates than the original loan.  Compl. ¶ 23.  Genesis launched its lending business in 2018 and rose to prominence as one of the largest lending businesses in cryptocurrency, with more than $244.4 billion in cumulative loan originations.  Id. ¶ 22.

In February 2021, Gemini—a cryptocurrency trust company—entered into a partnership with Genesis whereby it would offer its customers the opportunity to lend their digital assets to Genesis and earn interest.  Compl. ¶¶ 2, 12, 24.  Gemini marketed this product as the "Gemini Earn" program.  Id.  Each Gemini customer who wished to participate in the Gemini Earn program executed an MLA among the customer (as the lender), Genesis (as the borrower), and Gemini (as custodian and authorized agent for the customer).  MLA § XXV.  Each MLA provided that "none of Genesis' parents or affiliates shall have any liability under this Agreement," id. § XVII,  and that "any and all claims and liabilities against Genesis arising in any way out of this Agreement are only the obligation of Genesis, and not any of its parents or affiliates, including but not limited to Digital Currency Group, Inc."  Id. § XVII.  Gemini warranted that it was a sophisticated party, represented by sophisticated counsel.  Id. §§ V(d), XXIV.

Participants in the Gemini Earn program were not the only parties who lent assets to Genesis: "Genesis provides the full suite of services global investors require for their digital asset

---

[3] The following facts are drawn from the Complaint, documents incorporated therein, and documents relied on by Gemini in bringing this suit.  *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 168 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).  The Court "may consider . . . statements or documents incorporated into the complaint by reference."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

portfolios. It offers digital asset OTC lending, institutional lending, and prime services." Compl.

¶ 18. The Gemini Earn program thus comprised only one part of Genesis's lending portfolio.

### B.    Three Arrows Capital

Genesis made money by relending digital assets it borrowed. One of the third parties who

frequently borrowed from Genesis was Three Arrows Capital Ltd. ("3AC"). As of June 2022,

3AC owed approximately $2.3 billion in loans to Genesis. Compl. ¶ 43. Gemini alleges that part

of 3AC's borrowing strategy involved Grayscale Investments, LLC ("Grayscale"), a DCG-owned

company that sponsored and managed an investment fund, the Bitcoin Trust. *Id.* ¶¶ 21, 45.

Accredited investors could obtain shares in the Bitcoin Trust by contributing digital assets (bitcoin)

to the trust, and those shares could be bought and sold on the open market. *Id.* ¶ 45.

According to Gemini, 3AC borrowed digital assets from Genesis in order to contribute

bitcoin to the Bitcoin Trust in exchange for shares in the trust. Compl. ¶ 45. After a mandatory

six-month holding period, 3AC could sell those shares on the open market and, if the trading price

for the shares exceeded the price of the bitcoin 3AC had contributed to the Bitcoin Trust, earn a

profit. *Id.* ¶¶ 45–46. This strategy only worked, however, so long as 3AC earned more from

selling its shares in the Bitcoin Trust than it had to repay its lenders. Eventually, however, prices

for shares in the Bitcoin Trust fell below the prices for bitcoin. *Id.* ¶ 48.

In June 2022, 3AC was called upon by its lenders to post additional collateral for its

outstanding debt, but was unable to do so. Compl. ¶¶ 39, 41–42. 3AC thereafter commenced

liquidation proceedings in the British Virgin Islands. *Id.* ¶¶ 39, 41. At the time, 3AC owed Genesis

$2.36 billion, a sum Genesis had little hope of recovering. *Id.* ¶ 43. After foreclosing on collateral,

Genesis was left with an unpaid debt from 3AC of approximately $1.2 billion. *Id.* ¶¶ 5, 43.

### C.    Genesis's Financial Condition Following 3AC's Demise

On June 17, 2022, Genesis advised its lenders that a "large counterparty" had failed to meet

a margin call and that Genesis would "actively pursue recovery on any potential residual loss through all means available."  Compl. ¶ 45.

DCG is the indirect parent of Genesis, Compl. ¶¶ 15, 19, with its own separate executive and management teams.  On June 30, 2022, DCG exchanged a $1.1 billion promissory note, with 1% annual interest and a ten-year maturity (the "Note"), for Genesis's approximately $1.2 billion account receivable from 3AC.  Ex. B (Note).  The Note provided for DGC to pay Genesis any future proceeds received from 3AC.  *Id.* § 1.6.  On July 6, 2022, a Genesis representative Tweeted: "we worked with [DCG] to find the optimal strategy to further isolate the risk.  DCG has assumed certain liabilities of Genesis related to this counterparty to ensure we have the capital to operate and scale our business for the long-term."  Compl. ¶ 42 (emphasis omitted).

Following execution of the Note, Genesis communicated directly with Gemini and other lending counterparties regarding its financial condition.  Compl. ¶¶ 54, 61–66, 84, 88, 89.  Genesis accounted for the Note as a $1.1 billion "[r]eceivable from related part[y]" in the financial records it shared with Gemini and others.  *Id.* ¶¶ 73, 78, 89.  DCG was excluded from the vast majority of these communications, and was not an active participant in any (just copied on two emails referenced in the Complaint).  *See id.* ¶¶ 52–54, 61–66, 71, 80, 87–89.

Gemini alleges only a single relevant interaction between it and Defendants:  an October 2022 lunch meeting between DCG's CEO (Defendant Barry Silbert) and Gemini's co-founder (Cameron Winklevoss).  Compl. ¶ 96.  The purpose of that meeting, Gemini alleges, was for the two to discuss the Gemini Earn program, "ways to take advantage of the crypto winter," and opportunities "to collaborate closely in the future."  *Id.* ¶¶ 95, 98.  Silbert allegedly told Winklevoss that Genesis "needed sufficient time to effect an orderly unwinding of its 'complex' loan book," and that difficulties in terminating the Gemini Earn program were attributable to "a

mismatch in the timing of Genesis's loan positions." *Id.* ¶ 97.  Gemini claims that, following this meeting, it decided to "delay the termination of the Gemini Earn Program."  *Id.* ¶ 99.

The only allegation remotely connecting DCG to the Gemini Earn program is that, on November 10, 2022, DCG, Genesis, and Gemini executed an agreement under which DCG agreed to transmit additional collateral to Genesis for the benefit of Gemini Earn lenders (the "Tripartite Agreement").  Compl. ¶ 100.  DCG thereafter transferred "31,180,804 shares of GBTC (valued in excess of $626.1 million as of July 6, 2023) to Genesis."  *Id.*

### D.    Genesis's Bankruptcy and Resulting Lawsuits

In November 2022, the cryptocurrency exchange FTX Trading Ltd. ("FTX") unexpectedly unraveled.  Compl. ¶ 8.  Shortly thereafter, Genesis disclosed its financial exposure to FTX.  *Id.* As the cryptocurrency market panicked, Gemini Earn lenders began recalling their loans, putting severe strain on Genesis's short-term liquidity.  *Id.*  On November 16, 2022, in an effort to preserve assets amidst an unprecedented bank run, Genesis suspended all withdrawals of borrowed cryptocurrency, including assets it had borrowed through Gemini Earn.  *Id.* ¶¶ 103–04.

On January 19, 2023, Genesis filed a petition for Chapter 11 bankruptcy relief.  Compl. ¶ 105.  Additionally, unable to access their cryptocurrency assets held by Genesis, Gemini Earn lenders filed several lawsuits against Gemini, alleging a variety of misconduct arising from the lending relationship memorialized in the MLAs.  *See, e.g.*, *Coburn v. Gemini Tr. Co.*, No. 650567/2023 (N.Y. Sup. Ct. Jan. 29, 2023); *Chablaney v. Gemini Tr. Co.*, No. 650076/2023 (N.Y. Sup. Ct. Jan. 5, 2023); *Picha v. Gemini Tr. Co.*, No. 22-cv-10922 (S.D.N.Y. Dec. 27, 2022).  The Securities and Exchange Commission also commenced an enforcement action against Gemini.  *See* *SEC v. Gemini Tr. Co.*, No. 23-cv-287 (S.D.N.Y. Jan. 12, 2023).

Months after this salvo of litigation against it, Gemini filed this lawsuit against Defendants. Defendants timely and properly removed to federal court.

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), Gemini must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court is not obliged to accept as true legal conclusions, naked assertions, conclusory statements, or implausible inferences.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nor must the Court accept any allegation contradicted by documents incorporated into the complaint.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

Rule 9(b) "sets forth a heightened pleading standard for allegations of fraud," which requires that fraud be pled with "particularity."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  A complaint alleging a fraud claim must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Id.* (quotation marks omitted).

## ARGUMENT

The principal and pervasive problem with Gemini's inflammatory and factually baseless allegations is that they have very little to do with Defendants.  Taken down to its actual substance, the Complaint identifies just *one* allegedly false representation by Defendants to Gemini— Silbert's statements at the October 2022 lunch with Winklevoss.  And as to those statements, Gemini does not actually allege that anything Silbert said was actionably false.  Instead, it just repeats its claim that Genesis was insolvent, pre-supposes that DGG knew and omitted that fact, and avers that it was incumbent upon Defendants to apprise Gemini accordingly.  It was not.

The remaining allegations relate to alleged misrepresentations by *Genesis*.  But DCG and Genesis are separate companies, and Gemini offers no theory that would allow the alleged misrepresentations by Genesis—that are not even described with particularity—to be imputed to DCG.  Instead, Gemini rotely asserts the generalized supposition that DCG "participated" in

8

various communications and representations.  But neither through direct nor aiding-and-abetting liability can Gemini shift responsibility for the alleged torts to Defendants.

## I.   GEMINI FAILS TO ADEQUATELY AND PARTICULARLY ALLEGE FRAUD BY DEFENDANTS

To withstand dismissal on its fraud claim against Defendants, Gemini must adequately allege "(1) a material misrepresentation or omission of fact; (2) made by a defendant with knowledge of its falsity; (3) intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).  Gemini fails to adequately plead even one element of its claim, much less all of them.

### A.   Gemini Fails to Plead Any Actionable Misrepresentations by Defendants

### 1.   None of the Statements by Defendants Are Actionable

Stripping out the allegations regarding misrepresentations allegedly made by *Genesis*— which comprise the vast majority of the Complaint—Gemini alleges just *one* misrepresentation by DCG to Gemini.  As a matter of well-settled law, this does not remotely suffice to plead fraud.

The Complaint alleges that in his lunch with Winklevoss, Silbert stated that "Genesis simply needed sufficient time to effect an orderly unwinding of its 'complex' loan book, and that any difficulty that the termination of the Gemini Earn Program would cause for Genesis was merely a mismatch in the timing of Genesis's loan positions."  Compl. ¶ 97.  The problem is that Gemini does not actually allege what about these statements was supposedly false—Gemini does not dispute that Genesis needed sufficient time to unwind its complex loan book or that difficulties arising from the Gemini Earn program were the product of a "mismatch" in timing.  *See Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*, 2011 WL 5962804, at *10 (N.Y. Sup. Ct. Apr. 15, 2011) (fraud claim dismissed where "plaintiffs have alleged no facts sufficient to demonstrate that any of the statements [were] false when made").  That is because these statements are not the kind of

9

assertions of objective fact capable of verification necessary for a fraud claim.  *See In re Refco Inc. Sec. Litig.*, 2010 WL 11500542, at *22 (S.D.N.Y. Oct. 22, 2010) (dismissing claim where alleged misstatements were "vague," "imprecise," and "subject to multiple interpretations").

Gemini nonetheless asserts in conclusory fashion that these statements were false because "Genesis had a gaping hole in its balance sheet" owing to the 3AC losses and because DCG had not provided adequate financial support to Genesis.  Compl. ¶ 98.  But none of that contradicts the statements Silbert allegedly made.  Gemini cannot show falsity simply by reciting its conclusory assertions about Genesis's financial health, nor can Gemini show that the terms of the Note, pursuant to which DCG had exchanged Genesis's uncollectable receivable from 3AC for an enforceable promissory note, in any way undermine the veracity of Silbert's representations.

Gemini also alleges that in July 2022, DCG's Chief Operating Officer had a phone call with "another Genesis depositor" in which he purportedly made false statements.  Compl. ¶¶ 83–84.  These statements cannot form the basis for liability.  Gemini's failure to identify the depositor—who does not appear to have filed suit—is reason enough to dismiss these allegations.  *See Yencho v. Chase Home Fin. LLC*, 2015 WL 127721, at *3 (S.D.N.Y. Jan. 8, 2015) ("Factual allegations must reflect the 'who, what, when, where and how of the alleged fraud.'").  Moreover, the statements were not made to Gemini and Gemini does not allege that it relied upon them; New York law does not "extend the reliance element of fraud to include a claim based on the reliance of a third party, rather than the plaintiff."  *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (2016); *see also Sec. Inv'r Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 72 (2d Cir. 2000) (rejecting claim because plaintiffs "never received" the alleged misrepresentation); *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 217 (S.D.N.Y. 2019) (rejecting claim because plaintiffs

failed to allege that they "saw, read, or otherwise noticed" the alleged misrepresentation).[4]

### 2.    Defendants Are Not Liable for Alleged Misrepresentations by Genesis

Gemini cannot salvage its fraud claim by relying on statements allegedly made by Genesis, and *not* Defendants.  These include:  (1) Genesis's purported representations concerning risk management and solvency prior to 3AC's collapse (Compl. ¶¶ 29–36); (2) a July 6 email and phone call concerning Genesis's financial position (*id.* ¶¶ 61–66); (3) a July 18 email concerning Genesis's exposure to 3AC (*id.* ¶ 52); (4) a July 27 and 28, 2022 email exchange concerning the contents of financial reports previously provided by Genesis (*id.* ¶¶ 71–74); and (5) other unspecified communications (*see id.* ¶¶ 51, 80).  Setting aside that Gemini does not identify anything factually inaccurate about Genesis's statements, Defendants were not the "maker" of any of these statements, and nor does Gemini allege that they "authorized" or "caused" the statements to be made.  *Woori Bank v. RBS Secs., Inc.*, 910 F. Supp. 2d 697, 702 (S.D.N.Y. 2012); *see also Kirschner ex rel. Millennium Lender Claim Tr. v. J.P. Morgan Chase Bank, N.A.*, 2020 WL 9815174, at *8 (S.D.N.Y. Dec. 1, 2020) ("[C]onclusory language . . . does not support Plaintiff's theory that [defendants] controlled [the third party's] statements.").

Recognizing this gaping hole in its theory, Gemini baldly asserts that Defendants are liable for failing to *correct* statements made by Genesis regarding "the nature of DCG's support" and Genesis's financial condition.  Compl. ¶¶ 40–42, 59, 82, 88–90, 96–97.  That contention runs headlong into the "basic tenet of American corporate law" holding that "the corporation and its shareholders are distinct entities."  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003).  New York law recognizes this principle.  *See Beck v. Consol. Rail Corp.*, 394 F. Supp. 2d 632, 637

---

[4] Many of the statements allegedly made by Genesis were to unnamed third parties, *see, e.g.*, Compl. ¶¶ 53–54, 83–84, 87–89, and are defective for the same reason.  And as set forth below, any such misrepresentations are not imputable to Defendants.  *See infra* pp. 11–12.

(S.D.N.Y. 2005); *DeGraziano v. Verizon Commc'ns, Inc.*, 325 F. Supp. 2d 238, 245 (E.D.N.Y. 2004).  While there are limited exceptions to this rule, none applies here, and Gemini does not allege otherwise.  Nor could it, as Gemini agreed in the MLAs that DCG would have no liability for the conduct of Genesis.  *See* MLA § XVII.

Gemini cannot sidestep this law by framing its allegations in terms of a failure to correct.  Silence is "not actionable under the common law of fraud and deceit unless there is a duty to speak."  *Kirschner*, 2020 WL 9815174, at *10 (quotation marks omitted).  Such duty arises only "where the parties stand in a fiduciary . . . relationship, or where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."  *In re Fyre Festival Litig.*, 399 F. Supp. 3d at 217 (quotation marks omitted).  Gemini does not allege a fiduciary relationship between it and Defendants, and Gemini offers nothing beyond bare conclusory allegations that Defendants knew that Gemini was "acting on the basis of mistaken knowledge."  *See also Brass v. Am. Film Techs., Inc.*, 987 F.2d at 142, 152 (2d Cir. 1993) ("[A] fraudulent concealment claim based on superior knowledge must allege that the defendant 'knew that the plaintiff was acting under a mistaken belief with respect to a material fact'" (citation omitted)).

Moreover, even if Defendants had superior knowledge and knew Gemini was acting on it, "[t]he duty to disclose superior knowledge normally 'arises in the context of business negotiations where parties are entering a contract,'" *In re Fyre Festival*, 399 F. Supp. 3d at 218 (quoting *Lerner*, 459 F.3d at 292), not simply anytime a party allegedly knows something someone else does not.  The notion that DCG's officers were required to comb through pages of emails discussing myriad topics and not even addressed to them to search out and correct any hypothetical misrepresentations by a legally distinct subsidiary is beyond the pale.

Gemini makes the unsupported claim that DCG's provision of approximately $600 million worth of collateral to Genesis in the Tripartite Agreement—for the benefit of Gemini Earn users— shortly after Silbert's lunch with Winklevoss somehow gave rise to a legal obligation by Defendants to "correct" representations regarding Genesis's losses.  Compl. ¶ 101.  But an ordinary commercial relationship does not give rise to a blanket duty to correct all alleged misrepresentations made by others.  *Tellez v. OTG Interactive, LLC*, 2016 WL 5376214, at *5 (S.D.N.Y. Sept. 26, 2016) ("A duty to speak cannot arise simply because two parties may have been on opposite sides of a bargaining table when a deal was struck between them." (quotation marks omitted)).  Gemini does not even attempt to connect any of Genesis's allegedly false statements to the representations made by Defendants in connection with the Tripartite Agreement.

### B.      Gemini Fails to Plead Knowledge

Even if Gemini had adequately alleged that Defendants made false statements for which they are responsible (it has not), Gemini comes nowhere close to alleging that Defendants had knowledge of falsity.  *See, e.g.*, *In re Fyre Festival*, 399 F. Supp. 3d at 212–13 (fraud requires proof of the defendant's "knowledge of [the statement's] falsity"); *Tradeshift, Inc. v. Smucker Servs. Co.*, 2021 WL 4463109, at *6 (S.D.N.Y. Sept. 29, 2021) (dismissing fraud claim when plaintiff failed to allege defendant "knew that the representations were false when made").

Gemini's sparse allegations of knowledge by Defendants are based on nothing more than its say-so.  *See* Compl. ¶¶ 6–7, 98.  The only facts Gemini musters are allegations that Defendants knew of the Note's terms.  But Gemini does not identify any allegedly false statements by Defendants *about the terms of the Note*—rather, Gemini claims the statements Defendants made were false because they purportedly misrepresented (or omitted information about) Genesis's financial health more generally.  *See id.* ¶¶ 83–85, 95, 97.  There are no non-conclusory allegations of knowledge by Defendants about *those* facts, *see In re Duane Reade Inc. Sec. Litig.*, 2003 WL

Case 1:23-cv-06864-LJL   Document 17   Filed 08/10/23   Page 21 of 33

22801416, at *10 (S.D.N.Y. Nov. 25, 2003) ("[M]ere speculation is inadequate to plead knowledge of allegedly omitted facts." (citation omitted)), *aff'd sub nom. Nadoff v. Duane Reade, Inc.*, 107 F. App'x 250 (2d Cir. 2004), or that the statements themselves were even false.

Indeed, any possible inference that Defendants knew of Genesis's insolvency is negated by the fact that, just days before Genesis shuttered its doors, DCG executed the Tripartite Agreement. Compl. ¶ 100. That Defendants pledged $600 million worth of assets as collateral belies any plausible allegation of knowledge regarding Genesis's insolvency.

### C.    Gemini Fails to Plead a Strong Inference of Scienter

Gemini has also failed to adequately plead any "facts that give rise to a *strong inference* of fraudulent intent." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 179 (2d Cir. 2004) (quotation marks omitted); *see also Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 446 (S.D.N.Y. 2014) ("The scienter element for common law fraud 'is essentially the same as that under federal securities laws.'" (quotation marks omitted)). A strong inference of fraudulent intent must be established "'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27–28 (2d Cir. 2014). Gemini has done neither.

Gemini's efforts to plead motive and opportunity fail, because the Complaint alleges no "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Harborview Value Masterfund, L.P. v. Freeline Sports, Inc.*, 2012 WL 612358, at *9 (S.D.N.Y. Feb. 23, 2012) (quotation marks omitted). The only possible motive even posited by Gemini is that keeping Genesis afloat allowed Genesis to continue lending digital assets to 3AC, which could in turn purchase shares in the Bitcoin Trust, increasing the management fees earned by Grayscale. Compl. ¶ 3. The threshold problem with this theory is that it once again

conflates DCG with its subsidiaries—Grayscale is a separate entity with its own revenue stream, and "the mere existence of a parent-subsidiary or affiliate relationship is not on its own sufficient to impute the scienter of the subsidiary to the parent or affiliate." *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 317 (S.D.N.Y. 2011); *see also Defer LP v. Raymond James Fin., Inc.*, 654 F. Supp. 2d 204, 218 (S.D.N.Y. 2009) ("[T]here is no . . . rule requiring the imputation of a subsidiary's knowledge to its parent . . . . Nor should there be.").

Moreover, a parent's "motive to maintain the appearance of corporate profitability, or of the success of an investment," is not sufficient for scienter. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996); *see also Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 429 (S.D.N.Y. 2010) (rejecting profit-seeking motive as basis for fraudulent intent (collecting cases)). And, even if DCG could be said to have a motive to keep Genesis running, that does not establish intent *to defraud*—given DCG's $600 million pledge of collateral to Genesis in November 2022, *see* Compl. ¶ 100, the only plausible inference is that DCG's actions were a *genuine* effort to support Genesis. Gemini provides no reason, beyond pure speculation, to conclude otherwise.

Gemini's theory of conscious misbehavior and recklessness fare no better. "Reckless is 'at least, . . . an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 71 (S.D.N.Y. 2010), *aff'd*, 485 F. App'x 461 (2d Cir. 2012). But despite its broad and unsubstantiated allegations against Defendants, Gemini alleges no actual *facts* demonstrating that Defendants were engaged in "highly unreasonable" conduct. *See Warren v. Coca-Cola Co.*, 2023 WL 3055196, at *9 (S.D.N.Y. Apr. 21, 2023) (rejecting a "lone, conclusory allegation that 'Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations'"). Nor does Gemini allege

any particular facts indicating that Defendants knew of but ignored red flags regarding Genesis's representations to investors.  *See Saltz*, 782 F. Supp. 2d at 76–77.

Gemini's allegation that the "basic nature" of the Note was fraudulent is premised on no particularized—or even general—allegations of *fact* as to why that would be the case.  Compl. ¶ 92.  Gemini muses about what kind of response from DCG would have been most "rational" under the circumstances, but Gemini's judgment about what DCG ought to have done as a business matter does nothing to show that DCG was a knowing participant in a fraudulent exchange. Gemini takes issue with how Genesis represented the value of the Note to investors, *see id.*, but there are no well-pled allegations that DCG had any notion of or involvement with how Genesis accounted for the Note on its books, *see, e.g., Kelly v. Beliv LLC*, 2022 WL 16836985, at *10 (S.D.N.Y. Nov. 9, 2022) ("Rule 9(b) requires a plaintiff to 'allege facts that give rise to a strong inference of fraudulent intent.'" (quoting *Lerner*, 459 F.3d at 290)).  The Complaint glaringly omits any allegations of communications between Genesis and DCG regarding an alleged plan to misrepresent the Note, or any particularized facts demonstrating that DCG issued the Note to knowingly further such a plan.  At bottom, Gemini has alleged only a business transaction with which it disagrees, but that comes nowhere close to establishing fraud on the part of Defendants.

### D.      Gemini Fails to Plead Reasonable Reliance

Gemini's claims also fail for the absence of plausible allegations regarding reliance.  A sophisticated party—as Gemini warranted it was in the MLA, MLA §§ V(d), XXIV—cannot establish that its reliance was reasonable where "the information necessary to unmask the alleged fraud [was] accessible to the sophisticated party through minimal diligence," no "matter whether the requisite material was made available to Plaintiffs by Defendants."  *Terra Secs. Asa Konkursbo v. Citigroup, Inc.*, 740 F. Supp. 2d 441, 449 (S.D.N.Y. 2010), *aff'd*, 450 F. App'x 32 (2d Cir. 2011).  Courts thus routinely dismiss fraud claims where a party fails to plead that it exercised

minimal diligence.  *See, e.g.*, *id.* at *451; *Brock Cap. Grp. LLC v. Siddiqui*, 2022 WL 2047589, at

*6 (S.D.N.Y. June 7, 2022); *Afra v. Zamir*, 76 A.D. 3d 56, 62 (N.Y. App. Div. 2010), *aff'd*, 17

N.Y.3d 737 (2011).  The same result is warranted here.

Gemini concedes it knew that $1.1 billion of Genesis's assets were attributable to

"receivables from related parties."  Compl. ¶ 73.  It also concedes that it was both Genesis's

lending partner and the agent and custodian for Gemini Earn lenders.  *Id.* ¶ 25.  Yet Gemini

nowhere alleges that it probed the terms or details of Genesis's $1.1 billion "receivables from

related parties."  Instead, the Complaint shows that Gemini could have asked basic questions to

reveal the "information necessary to unmask the alleged fraud," but did not.  *Terra*, 740 F. Supp.

2d at 449.  Gemini does not even allege that it inquired as to which "related part[y]" owed the

receivable.  Gemini's failure to engage in minimal diligence undermines its claim of fraud.

### E.   Gemini Fails to Plead Actionable Damages

The Complaint also fails to allege any actionable damages arising from the purported fraud.

The only harms asserted by Gemini are attorneys' fees and expenses allegedly incurred while

defending against unidentified lawsuits.  Compl. ¶¶ 10, 106–08.  Gemini's failure to identify a

single lawsuit for which fees and costs are sought is itself fatal, but more critically, a plaintiff may

recover only "the actual pecuniary loss sustained as the direct result of the wrong."  *Starr Found.*

*v. Am. Int'l Grp., Inc.*, 76 A.D.3d 25, 27 (N.Y. App. Div. 2010) (quotation marks omitted).  Gemini

offers no factual allegations tying Defendants' alleged conduct to the attorneys' fees it has

purportedly incurred as a result of lawsuits filed by *third parties*.

Indeed, even a cursory examination of the claims at issue in the now-pending lawsuits

against Gemini reveals that they are unrelated to the allegations in this action.  For example, many

of the cases involve allegations that Gemini unlawfully sold unregistered securities and that it

lacked adequate risk management and compliance functions.  *See, e.g.*, *Berdugo v. Gemini Tr. Co.*,

No. 23-cv-60057 (S.D. Fla. 2023), Dkt. No. 1 ¶ 8; *Picha v. Gemini Tr. Co.*, No. 22-cv-10922 (S.D.N.Y. 2023), Dkt. No. 45 ¶ 74.   Neither of those things has anything to do with Defendants' alleged fraud.   And although Gemini claims it has incurred fees in Genesis's bankruptcy case, *see* Compl. ¶ 10, Gemini does not claim that Defendants did anything to *render* Genesis bankrupt.

Gemini's damages theory is also premised on impermissible speculation.   Gemini claims that but for the alleged fraud, it "would not have refrained from terminating the Gemini Earn Program—which in turn would have eliminated or reduced the claims asserted against Gemini relating to the Gemini Earn Program."   Compl. ¶ 108.   "New York law bars claims that require a factfinder to cut through this many 'layers of uncertainty' and speculation."   *AHW Inv. P'ship v. Citigroup Inc.*, 980 F. Supp. 2d 510, 527 (S.D.N.Y. 2013), *aff'd*, 661 F. App'x 2 (2d Cir. 2016) (quoting *Starr Found.*, 76 A.D.3d at 30).   Gemini asks this Court to infer that had it known of Genesis's alleged insolvency, it would have terminated the Gemini Earn program earlier, Genesis would have had the funds to repay Gemini's investors (notwithstanding that Gemini claims Genesis was insolvent at all relevant times), *and* investors would not have sued Gemini for any of the unrelated claims they have asserted.   But "the general tendency of the law, in regard to damages at least, is not to go beyond the first step."   *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010) (quotation marks omitted).   Moreover, interposing all of this is the intervening—and unforeseeable—collapse of FTX, an event which cannot possibly be attributed to Defendants and which severs any plausible chain of causation.   *See Kush v. City of Buffalo*, 59 N.Y.2d 26, 33 (1983).   The law does not support such an attenuated theory of damages.

### F.   Gemini's Conspiracy Theory Fails

Gemini attempts to bolster its deficient claim by vaguely gesturing toward a theory of conspiracy liability, *see, e.g.*, Compl. ¶ 116, but that effort fails.

*First*, any theory of conspiracy is impermissibly duplicative of Gemini's aiding-and-abetting claim.  A conspiracy claim that is supported by "essentially the same alleged acts that form the basis of the aiding and abetting claim . . . . is duplicative" and should be dismissed.  *Briarpatch Ltd., L.P. v. Geisler Roiberdeau, Inc.*, 2007 WL 1040809, at *26 (S.D.N.Y. Apr. 4, 2007), *aff'd sub nom. Briarpatch Ltd. LP v. Phx. Pictures, Inc.*, 312 F. App'x 433 (2d Cir. 2009); *see also In re Platinum-Beechwood Litig.*, 426 F. Supp. 3d 14, 21 (S.D.N.Y. 2019) (similar). Here, Gemini's theory of conspiracy is premised on the same allegations and underlying tort as its aiding-and-abetting claim against Defendants.  Accordingly, Gemini's conspiracy claim is duplicative and must be dismissed.

*Second*, Gemini in any event fails to plead the basic elements of a conspiracy, which requires more than an allegation of direct fraud.  To plead conspiracy liability, Gemini must adequately allege the underlying fraud *and* four other elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."  *Ritchie Cap. Mgmt., LLC v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 339 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 249 (2d Cir. 2016); *see also Heinert v. Bank of Am. N.A.*, 835 F. App'x 627, 632 (2d Cir. 2020) (claim for conspiracy "requires the same allegations of actual knowledge" as aiding and abetting).

Gemini fails to plead these elements.  It alleges no facts plausibly establishing the existence of an unlawful agreement between Defendants and Genesis, and its "bare assertion" of a conspiracy is insufficient.  *Twombly*, 550 U.S. at 556; *LeFebvre v. N.Y. Life Ins. & Annuity Corp.*, 214 A.D.2d 911, 912 (N.Y. App. Div. 1995) (dismissing claim where plaintiff alleged no facts that "support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or

shared a perfidious purpose").  Gemini also does not allege an "overt act" in furtherance of the conspiracy—it points to DCG's execution of the Note, but the execution of a lawful business transaction is not sufficient.  *See LeFebvre*, 214 A.D.2d at 913 (the "mere fact that a defendant's otherwise lawful activities may have assisted another in pursuit of guileful objectives is not a sufficient basis for a finding that he or she conspired to defraud").  And Gemini does not plead any facts plausibly establishing that Defendants "actually knew the information provided to plaintiff was false or misleading, or to otherwise directly connect [Defendants] to [Genesis's] allegedly fraudulent conduct." *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 121 (S.D.N.Y. 2009).

Accordingly, Gemini's conspiracy allegations fail to breathe life into its fraud claim, which should be dismissed in its entirety.

## II.   GEMINI FAILS TO PLEAD AIDING AND ABETTING FRAUD WITH PARTICULARITY

Perhaps recognizing it cannot sustain a claim for direct fraud against Defendants, Gemini seeks to do indirectly what it cannot do directly, alleging a claim for aiding and abetting against Defendants.  *See* Compl. ¶¶ 118–20.  Gemini does not articulate the basis for this theory, except in broad strokes that largely recite the elements of liability.  But on whatever factual allegations it is premised, this claim fares no better than the first.

To withstand dismissal, Gemini must plead: "'(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission.'"  *Geoffrey A. Orley Revocable Tr. v. Genovese*, 2020 WL 611506, at *12 (S.D.N.Y. Feb. 7, 2020) (alteration in original).  "[T]he particularity requirements of Rule 9(b) apply to claims of aiding and abetting fraud no less than to direct fraud claims." *Filler v. Hanvit Bank*, 156 F. App'x 413, 417 (2d Cir. 2005).

20

### A.    Gemini Fails to Plead Actual Knowledge of Fraud

The Complaint is devoid of factual allegations necessary to support "a strong inference" of Defendants' actual knowledge of the alleged fraud.  To impose liability on Defendants, Gemini must plead actual knowledge of the underlying fraud.  *Lerner*, 459 F.3d at 292.  "Constructive knowledge is not sufficient, nor is a 'lower standard such as recklessness or willful blindness.'"  *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 412 (S.D.N.Y. 2021).  Thus, "'[t]he burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one.'"  *Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d 536, 546 (S.D.N.Y. 2007).

As set forth above, *see supra* pp. 13–14, Gemini's allegations of knowledge are uniformly deficient.  Gemini offers a slew of conclusory assertions that Genesis acted "with the knowledge and active involvement of DCG," Compl. ¶ 6; *see also id.* ¶¶ 3, 20, 82–83, 98, but these allegations amount to no more than legal conclusions masquerading as facts, *see Krys v. Pigott*, 749 F.3d 117, 130 (2d Cir. 2014) (conclusory statements of actual knowledge are insufficient to support a claim for aiding and abetting fraud).  This high-level approach to pleading is decidedly inadequate for alleging fraud.  *See Berdeaux*, 561 F. Supp. 3d at 413 (suspicions or ignorance of obvious warning signs "do not give rise to an inference of actual knowledge"); *Nat'l Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 147 (N.Y. App. Div. 1987) ("bare[] allegation[s]" that the defendants "had or should have had [] knowledge" are "plainly not sufficient").

Gemini's claim that Defendants were "put on notice" of Genesis's alleged fraud by way of emails on which DCG employees were copied (Compl. ¶¶ 87–90) is no substitute for plausible allegations of actual knowledge, *see Ryan v. Hunton & Williams*, 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) ("Allegations that [the defendant] suspected fraudulent activity, however, do not raise an inference of actual knowledge . . . .").  Moreover, most of these "notice" allegations relate to correspondence with unnamed parties other than Gemini.  *See, e.g.*, Compl.

¶¶ 87–90. But the relevant knowledge is knowledge of the fraud allegedly *perpetrated on Gemini*. *See Kirschner v. Bennett*, 648 F. Supp. 2d 525, 545 (S.D.N.Y. 2009) (aiding-and-abetting claim dismissed for the plaintiff's failure to "demonstrate that the defendants had actual knowledge of wrongful conduct *that harmed the [] customers* . . . not actual knowledge of different wrongful conduct that might have harmed others, such as [the company's] shareholders"). Any allegations regarding constructive knowledge of alleged misrepresentations to *other* investors are irrelevant.

Finally, Gemini's assertion that DCG and Genesis "agreed to . . . conceal the promissory note's existence and its terms from Genesis's depositors" is nothing beyond unadorned and factually unsupported accusation. Compl. ¶ 94. Defendants had no way of knowing the entire breadth of information Genesis had shared with Gemini regarding the terms and circumstances of the Note, and Gemini does not allege otherwise. And as discussed above, there is no support for Gemini's bare claim that the terms of the Note were inherently fraudulent. *See supra* pp. 16–17.

### B.      Gemini Fails to Plead Substantial Assistance

Gemini also has not adequately alleged substantial assistance by Defendants. To plead substantial assistance, Gemini must allege "facts from which the Court can infer that (1) the defendant affirmatively assisted, helped conceal, or failed to act when required to enable the fraud to proceed; and (2) 'the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.'" *Berdeaux*, 561 F. Supp. 3d at 416. Gemini has done neither.

### 1.      Gemini Fails to Allege That Defendants Affirmatively Assisted in Any Fraud

Nowhere in its Complaint does Gemini actually identify what conduct it claims constitutes "substantial assistance" by Defendants, and that alone is reason to dismiss this claim. But to the extent Gemini seeks to repurpose its insufficient allegations of fraud in service of its aiding-and-abetting claim, that attempt fails.

The closest Gemini comes to claiming substantial assistance is its assertion that the execution of the Note "demonstrates that DCG was a willing participant in the scheme to mislead." Compl. ¶ 92. There are no factual allegations to support this claim: Apart from deeming the Note "**tailor-made to allow DCG and Genesis to conspire to deceive Genesis depositors**," (*id.*), the Complaint contains no facts evidencing a fraudulent purpose. There are no facts—circumstantial or otherwise—remotely suggesting that Defendants ever intended to conceal, enable, or assist in wrongdoing. *See supra* Part II.B.

Moreover, as set forth above, *see supra* pp. 16–17, Gemini's claim that the "basic nature" of the Note was fraudulent is entirely conclusory and based on no factual allegations. Compl. ¶ 92. Whatever Gemini believes would have been most "rational" for DCG to do, that is irrelevant to whether the execution of this business transaction constituted substantial assistance to *fraud*. And absent specific allegations describing Defendants' direct participation in the purported fraud, Gemini's aiding and abetting claim fails. *See JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 257 (S.D.N.Y. 2005) (only in circumstances "'where there is an extraordinary motivation to aid the fraud'" will a defendant be held liable for aiding and abetting); *Chemtex*, 490 F. Supp. 2d at 547 (dismissal where no evidence that the defendant "either affirmatively assisted . . . in an effort to defraud [the plaintiff] . . . or in any way helped to conceal any such alleged [fraud]"); *see also Filler*, 156 F. App'x at 417 (aiding and abetting must be pled with particularity).

Nor can Gemini rely on its conclusory allegations that Defendants "collaborated" with Genesis to prepare responses to inquiries from an unidentified depositor. Compl. ¶¶ 87, 93. Gemini does not say what Defendants are alleged to have actually done in connection with the responses, and a generalized claim that Defendants were involved in the responses is not sufficient. *See Morin v. Trupin*, 711 F. Supp. 97, 113 (S.D.N.Y. 1989) ("[T]he substantial assistance must

relate to the preparation or dissemination of the document itself.").

And finally, as with its infirm allegations of direct fraud, aiding-and-abetting liability cannot be premised on Defendants' alleged failure to correct Genesis's alleged misstatements, because Defendants owed no fiduciary duty to Gemini to do so. *See Lerner*, 459 F.3d at 295 ("'[M]ere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.'"); *SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, at *8 (S.D.N.Y. May 24, 2016) ("Defendants' alleged failure to reveal the fraud cannot support a claim for aiding and abetting where, as here, the [] Defendants owed no fiduciary duty directly to plaintiff . . . ."), *aff'd sub nom. SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018).

Accordingly, Gemini's allegations regarding Silbert's alleged failure to disclose information about Genesis's solvency in his meeting with Winklevoss, *see* Compl. ¶¶ 7, 95–97, and regarding correspondence on which DCG employees were copied, *see id.* ¶¶ 87, 89–91, are not sufficient to allege affirmative assistance, *see Chemtex*, 490 F. Supp. 2d at 547 ("'[I]naction on the part of the alleged aider and abettor ordinarily should not be treated as substantial assistance . . . except when . . . it was in conscious and reckless violation of a duty to act.'"); *see also supra* pp. 12–13. A defendant's "[m]ere presence, and passive receipt of email, cannot, by definition, constitute affirmative assistance." *Winnick*, 406 F. Supp. 2d at 258.

### 2.   Gemini Fails to Plead That Defendants Proximately Caused Its Injuries

Finally, Gemini's aiding-and-abetting allegations fail for the additional reason that Gemini has failed to adequately allege proximate causation. As set forth above, Gemini has not alleged causation with respect to the alleged fraud generally, *see supra* pp. 18–19, but its allegations of causation arising out of Defendants' alleged aiding and abetting are even weaker.

To plead proximate cause in the context of aiding-and-abetting liability for fraud, Gemini

must adequately allege that Defendants' acts were a "'direct or reasonably foreseeable result of the conduct.'" *UBS AG*, 882 F.3d at 345.  "Merely pleading 'but-for' causation is not enough," rather, "'aider and abettor liability re[q]uires the injury to be a direct or reasonably foreseeable result of the conduct.'"  *SPV OSUS*, 2016 WL 3039192, at *6; *see also Bayshore Cap. Advisors, LLC, v. Creative Wealth Media Fin. Corp*., 2023 WL 2751049, at *36 (S.D.N.Y. Mar. 31, 2023) (proximate cause requires plaintiff to "demonstrate that the damages are not so remote as not to be directly traceable to the [tort] or the result of other intervening causes" (quotation marks omitted)).

Defendants' conduct is far removed from any injury Gemini has attempted to claim here. By Gemini's own admission, there are a host of other events contributing to its claimed injuries, including (1) numerous alleged misrepresentations by Genesis in which Defendants had no alleged involvement whatsoever, (2) the collapse of FTX, and (3) the decision by third parties to file suit against Gemini.  *See, e.g.*, Compl. ¶¶ 8, 10, 29–36, 54, 71–73.  In no sense could it be said that litigation against Gemini was the naturally foreseeable consequence of DCG's execution of the Note or Defendants' alleged silence as to Genesis's communications to third parties.  *See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007) (no proximate causation if "the alleged aider and abettor did not assist in the making or dissemination of th[e] statement").  Gemini's invocation of "but-for" causation, *see* Compl. ¶ 108, does nothing to establish a direct link between the meager conduct by Defendants that Gemini alleges and the downstream injury it alleges from third-party lawsuits.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.  Because no additional allegations could cure the substantive defects in the Complaint, dismissal should be with prejudice.

Dated: August 10, 2023                              Respectfully submitted,
        New York, New York

                                                    /s/ Jonathan D. Polkes

Joshua M. Wesneski                                  Jonathan D. Polkes
WEIL, GOTSHAL & MANGES LLP                          Caroline Hickey Zalka
2001 M Street NW, Suite 600                         Stefania D. Venezia
Washington, DC 20036                                Dylan L. Ruffi
Tel: (202) 682-7000                                 WEIL, GOTSHAL & MANGES LLP
Fax: (202) 857-0940                                 767 Fifth Avenue
                                                    New York, NY 10153
                                                    Tel: (212) 310-8000
                                                    Fax: (212) 310-8007

                                                    *Counsel for Defendants Digital Currency
                                                    Group, Inc. and Barry Silbert*