**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GEMINI TRUST COMPANY, LLC,

                                          *Plaintiff*,

                    v.

DIGITAL CURRENCY GROUP, INC.
and BARRY SILBERT,

                                          *Defendants*.

Case No. 1:23-cv-06864-LJL [rel. 23-2027]

Hon. Lewis J. Liman

ORAL ARGUMENT REQUESTED

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS THE AMENDED COMPLAINT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Counsel for Defendants Digital Currency
Group, Inc. and Barry Silbert*

October 3, 2023

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................5

    A.    Gemini and Genesis .............................................................................5

    B.    Three Arrows Capital ..........................................................................6

    C.    Genesis's Financial Condition Following 3AC's Demise ..................6

    D.    Genesis's Bankruptcy and Resulting Lawsuits ..................................8

    E.    Procedural History ..............................................................................8

LEGAL STANDARD ..........................................................................................9

ARGUMENT ....................................................................................................9

    I.    GEMINI FAILS TO ADEQUATELY AND PARTICULARLY ALLEGE
FRAUD BY DEFENDANTS ...........................................................10

        A.    Gemini Fails to Plead Any Actionable Misrepresentations by
Defendants ........................................................................................10

            1.    None of the Statements by Defendants Are Actionable .....................10

            2.    Defendants Are Not Liable for Alleged Misrepresentations by
Genesis ...............................................................................................12

        B.    Gemini Fails to Plead a Strong Inference of Scienter......................15

        C.    Gemini Fails to Plead Actionable Damages and Loss Causation ....17

        D.    Gemini's Conspiracy Theory Fails ...................................................19

    II.    GEMINI FAILS TO PLEAD AIDING AND ABETTING FRAUD WITH
PARTICULARITY ..........................................................................21

        A.    Gemini Fails to Plead Actual Knowledge of Fraud .........................21

        B.    Gemini Fails to Plead Substantial Assistance ..................................22

            1.    Gemini Fails to Allege That Defendants Affirmatively Assisted
in Any Fraud ......................................................................................23

            2.    Gemini Fails to Plead That Defendants Proximately Caused Its
Injuries ...............................................................................................24

CONCLUSION ................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AHW Inv. P'ship v. Citigroup Inc.*,
   980 F. Supp. 2d 510 (S.D.N.Y. 2013), *aff'd*, 661 F. App'x 2 (2d Cir. 2016)..........................19

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)...........................................................................................................5

*Bank Hapoalim B.M. v. WestLB AG*,
   121 A.D.3d 531 (N.Y. App. Div. 2014) ...................................................................................19

*Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*,
   2023 WL 2751049 (S.D.N.Y. Mar. 31, 2023) ........................................................................25

*Beck v. Consol. Rail Corp.*,
   394 F. Supp. 2d 632 (S.D.N.Y. 2005) .....................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................................9, 20

*Berdeaux v. OneCoin Ltd.*,
   561 F. Supp. 3d 379 (S.D.N.Y. 2021).........................................................................21, 22, 23

*Chemtex, LLC v. St. Anthony Enters., Inc.*,
   490 F. Supp. 2d 536 (S.D.N.Y. 2007)........................................................................21, 23, 24

*Chill v. Gen. Elec. Co.*,
   101 F.3d 263 (2d Cir. 1996)...............................................................................................15, 16

*Cohen v. Stevanovich*,
   722 F. Supp. 2d 416 (S.D.N.Y. 2010) .....................................................................................16

*Crigger v. Fahnestock & Co.*,
   443 F.3d 230 (2d Cir. 2006).....................................................................................................10

*Defer LP v. Raymond James Fin., Inc.*,
   654 F. Supp. 2d 204 (S.D.N.Y. 2009) .....................................................................................16

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003)..................................................................................................................13

*In re Duane Reade Inc. Sec. Litig.*,
   2003 WL 22801416 (S.D.N.Y. Nov. 25, 2003), *aff'd sub nom. Nadoff v.
   Duane Reade, Inc.*, 107 F. App'x 250 (2d Cir. 2004).............................................................12

*Filler v. Hanvit Bank*,
    156 F. App'x 413 (2d Cir. 2005) ..........................................................................21

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*,
    479 F. Supp. 2d 349 (S.D.N.Y. 2007)...................................................................25

*In re Fyre Festival Litig.*,
    399 F. Supp. 3d 203 (S.D.N.Y. 2019)............................................................14, 15

*Geoffrey A. Orley Revocable Tr. v. Genovese*,
    2020 WL 611506 (S.D.N.Y. Feb. 7, 2020)..........................................................21

*Harborview Value Masterfund, L.P. v. Freeline Sports, Inc.*,
    2012 WL 612358 (S.D.N.Y. Feb. 23, 2012)........................................................15

*Harris v. AmTrust Fin. Servs., Inc.*,
    135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016)..........................5

*Heinert v. Bank of Am. N.A.*,
    835 F. App'x 627 (2d Cir. 2020) ..........................................................................20

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010)..................................................................................................19

*IKB Int'l S.A. v. Bank of Am. Corp.*,
    584 F. App'x 26 (2d Cir. 2014) ............................................................................15

*JP Morgan Chase Bank v. Winnick*,
    406 F. Supp. 2d 247 (S.D.N.Y. 2005)............................................................23, 24

*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009)..................................................................22

*Krys v. Pigott*,
    749 F.3d 117 (2d Cir. 2014)..................................................................................21

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)....................................................................................9

*LeFebvre v. N.Y. Life Ins. & Annuity Corp.*,
    214 A.D.2d 911 (N.Y. App. Div. 1995) ...............................................................20

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)..................................................................9, 14, 21, 24

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
    568 F. Supp. 2d 349 (S.D.N.Y. 2008)..................................................................19

*Kirschner ex rel. Millennium Lender Claim Tr. v. J.P. Morgan Chase Bank, N.A.*,
  2020 WL 9815174 (S.D.N.Y. Dec. 1, 2020), *adopted by* 2021 WL 4499084
  (S.D.N.Y. Sept. 30, 2021), *aff'd*, 2023 WL 5439495 (2d Cir. Aug. 24, 2023) ................13, 14

*Morin v. Trupin*,
  711 F. Supp. 97 (S.D.N.Y. 1989) ...........................................................................................23

*Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank*,
  261 F.R.D. 13 (S.D.N.Y. 2009), *aff'd*, 382 F. App'x 107 (2d Cir. 2010) .............................17

*Nat'l Westminster Bank USA v. Weksel*,
  124 A.D.2d 144 (N.Y. App. Div. 1987) ..................................................................................22

*Pasternack v. Lab'y Corp. of Am. Holdings*,
  27 N.Y.3d 817 (2016) ..............................................................................................................12

*In re Platinum-Beechwood Litig.*,
  426 F. Supp. 3d 14 (S.D.N.Y. 2019).......................................................................................19

*In re Refco Inc. Sec. Litig.*,
  2010 WL 11500542 (S.D.N.Y. Oct. 22, 2010), *adopted by* 2011 WL 6097724
  (S.D.N.Y. Dec. 7, 2011)...........................................................................................................11

*Ritchie Cap. Mgmt., LLC v. Gen. Elec. Cap. Corp.*,
  121 F. Supp. 3d 321 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016) ...........................20

*Ryan v. Hunton & Williams*,
  2000 WL 1375265 (E.D.N.Y. Sept. 20, 2000) .......................................................................22

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
  84 F.3d 629 (2d Cir. 1996).......................................................................................................15

*Saltz v. First Frontier, LP*,
  782 F. Supp. 2d 61 (S.D.N.Y. 2010), *aff'd*, 485 F. App'x 461 (2d Cir. 2012).................15, 17

*Sec. Inv'r Prot. Corp. v. BDO Seidman, LLP*,
  222 F.3d 63 (2d Cir. 2000).......................................................................................................12

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994).....................................................................................................16

*SPV OSUS Ltd. v. AIA LLC*,
  2016 WL 3039192 (S.D.N.Y. May 26, 2016), *aff'd sub nom. SPV Osus Ltd. v.
  UBS AG*, 882 F.3d 333 (2d Cir. 2018).................................................................................24, 25

*SPV Osus Ltd. v. UBS AG*,
  882 F.3d 333 (2d Cir. 2018).....................................................................................................25

*Starr Found. v. Am. Int'l Grp., Inc.*,
  76 A.D.3d 25 (N.Y. App. Div. 2010) ...............................................................18, 19

*Stern v. Leucadia Nat'l Corp.*,
  844 F.2d 997 (2d Cir. 1988)........................................................................................12

*Tellez v. OTG Interactive, LLC*,
  2016 WL 5376214 (S.D.N.Y. Sept. 26, 2016).........................................................14

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)..........................................................................................9

*Tradeshift, Inc. v. Smucker Servs. Co.*,
  2021 WL 4463109 (S.D.N.Y. Sept. 29, 2021)........................................................15

*Valentini v. Citigroup, Inc.*,
  837 F. Supp. 2d 304 (S.D.N.Y. 2011)......................................................................16

*Woori Bank v. RBS Secs., Inc.*,
  910 F. Supp. 2d 697 (S.D.N.Y. 2012)......................................................................13

*Yablon v. Stern*,
  161 A.D.3d 594 (N.Y. App. Div. 2018) ..................................................................11

*Yencho v. Chase Home Fin. LLC*,
  2015 WL 127721 (S.D.N.Y. Jan. 8, 2015) ..............................................................13

*Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*,
  2011 WL 5962804 (N.Y. Sup. Ct. Apr. 15, 2011)..................................................11

## Other Authorities

Fed. R. Civ. P. 8 .................................................................................................................1

Fed. R. Civ. P. 9(b) ...........................................................................................1, 3, 9, 16, 21

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 9

Defendants Digital Currency Group, Inc. ("DCG") and Barry Silbert ("Silbert," and collectively, "Defendants") respectfully submit this memorandum of law in support of their Motion to Dismiss the Amended Complaint ("Amended Complaint" or "AC"), under Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Gemini Trust Company, LLC ("Gemini") brings fraud claims concerning the Gemini Earn program, formerly operated by Plaintiff Gemini in coordination with Genesis Global Capital, LLC ("Genesis"). Yet Genesis is not a defendant here. It filed for bankruptcy on January 19, 2023, leaving Gemini—which created, administered, and promoted the Gemini Earn program—with irate customers. Gemini and its principals—Cameron and Tyler Winklevoss— have tried to deflect the blame by contriving a public, Twitter-based character assassination campaign against Defendants DCG (Genesis's indirect parent) and Silbert (DCG's founder)— neither of whom operated or oversaw the Gemini Earn program. These tweets were personal, vicious, and false, accusing Silbert of "foster[ing] and architect[ing] a culture of lies and deceit" and describing a letter by Silbert as "another piece of carefully crafted stupidity."[1] This litigation is a continuation of that public relations smear campaign.

Through the Gemini Earn program, Gemini actively encouraged its existing customers to lend their digital assets (including cryptocurrency) to Genesis (not DCG) in exchange for interest, representing to its customers that it was a sophisticated market participant and that it had thoroughly vetted Genesis. Each Gemini customer who wished to participate in the Gemini Earn

---

[1]     Cameron     Winklevoss     (@Cameron),     TWITTER     (July   3,   2023,   8:27   PM), https://twitter.com/cameron/status/1676024844641550337; *see also* Cameron Winklevoss (@Cameron), TWITTER (Jan. 2, 2023, 9:02 AM), https://twitter.com/cameron/status/1609913051427524608 (claiming that Barry Silbert is "hid[ing] in [his] ivory tower" and using his background "as a bankruptcy restructuring associate" to take "the money of schoolteachers").

program executed a Master Loan Agreement ("MLA") among the customer (as the lender), Genesis (as the borrower), and Gemini (as custodian and authorized agent for the customer).  Ex. A ("MLA") § XXV.[2]

Notably absent from this arrangement is *any* participation by Defendants.  That is because even accepting Gemini's allegations as true, Defendants had virtually nothing to do with the Gemini Earn program—with its inception, with Gemini's promotion of the program to its customers, or with its ongoing operation.  Indeed, DCG's lack of involvement is memorialized in the MLA itself—put another way, directly contrary to the theory of the Amended Complaint, Plaintiff explicitly agreed in the MLA that Defendants played no role in Gemini Earn.  The MLA states that, "none of Genesis' parents or affiliates shall have any liability under this Agreement," MLA § XVII, and that "any and all claims and liabilities against Genesis arising in any way out of this Agreement are only the obligation of Genesis, and not any of its parents or affiliates, including but not limited to Digital Currency Group, Inc.," *id.* § XVII.

Yet Gemini filed this Amended Complaint nonetheless.  As Defendants demonstrated in their motion to dismiss Gemini's first complaint, its claims are afflicted by fundamental deficiencies that warrant dismissal as a matter of law.  Unable to muster any opposition to that motion, Gemini instead elected to file a second, amended complaint.  The Amended Complaint repeats the same contrived allegations and adds a host of conclusory allegations devoid of factual detail which are entitled to no weight, and superficial facts that do nothing to cure the defects in the original pleading.  The Amended Complaint should be dismissed, with prejudice, on any one of the following independent grounds.

---

[2] Citations to "Ex. _" refer to exhibits appended to the accompanying Declaration of Caroline Hickey Zalka, dated October 3, 2023.

*First*, not surprisingly given DCG's and Mr. Silbert's non-involvement in the Gemini Earn program, Gemini's fraud claim fails to allege any actionable misrepresentation.  In its 41 pages and 140 paragraphs of sensational claims, the Amended Complaint identifies just *one* representation made by Defendants to Gemini, allegedly at a lunch between Silbert and Cameron Winklevoss.  Yet as to that one communication, Gemini does not explain why it supposedly was fraudulent (much less with the particularity demanded by Rule 9(b)).  The rest of the Amended Complaint is a hodgepodge of conclusory allegations against non-defendant Genesis, which Gemini tries in various ways to impute to Defendants.  But it is a settled principle that parents are not liable for the conduct of their subsidiaries, and Gemini does not even try to allege any theory of alter ego. Instead, it asserts that Defendants are liable for not affirmatively correcting the alleged misstatements of Genesis.  That is not the law—Defendants owed no duty to Gemini to correct the allegedly false statements of another entity.

*Second*, Gemini fails to allege facts giving rise to any inference of scienter, much less the requisite strong inference. There simply are no indicia of fraud, no evidence of motive, opportunity, or red flags that were known and obvious but ultimately ignored—Gemini offers nothing beyond bare, conclusory assertions of fraudulent intent.  Instead, Gemini claims that a promissory note issued by DCG to Genesis was somehow inherently fraudulent, yet fails to support that assertion with any factual allegations of fraudulent intent by Defendants.

*Third*, Gemini fails to adequately plead loss causation or any cognizable harm.  The sole source of Gemini's alleged "damages" are litigation costs Gemini has incurred defending claims brought by irate Gemini Earn customers, against Gemini, asserting that Gemini sold unregistered securities and misleadingly touted itself as a trusted crypto platform (among other alleged misrepresentations).  It bears repeating that the Defendants here were not parties to the MLA

signed by Gemini's customers, had no role in marketing it, and that everyone (Gemini, Genesis, and Gemini's customers) agreed explicitly in the MLA that DCG had no role.  DCG has no obligation whatsoever to indemnify Gemini for such litigation costs.  Indeed, conspicuously absent from the Amended Complaint is any well-pled causal connection between the alleged misrepresentations in this suit and the subject matter of the third-party lawsuits against Gemini. Further, Gemini entirely ignores the critical intervening market event—the collapse of FTX Trading Ltd. ("FTX")—that severs any causal link between the alleged fraud and the alleged harm.

*Fourth*, Gemini's theory of conspiracy—which is entirely duplicative of its aiding-and-abetting claim—cannot save the Amended Complaint.  Gemini fails to plead the most essential elements of a conspiracy—the existence of an unlawful agreement and the parties' intentional participation in furtherance of that illicit agreement.

*Finally*, recognizing the deficiencies in its theory of primary liability, Gemini resorts to a fallback argument that Defendants somehow aided and abetted Genesis's alleged fraud through corporate transactions and paperwork.  This effort fares no better.  There are no well-pled allegations that Defendants had actual knowledge of any alleged fraud, and Gemini does no more than rely on Defendants' corporate relationship with Genesis to argue otherwise.  Once again, that effort runs squarely into the settled law prohibiting plaintiffs from equating subsidiaries with their parents.  Nor can Gemini allege any substantial assistance by Defendants.

At bottom, this lawsuit is an attempt by Gemini to smear Defendants—who had nothing to do with the inception or operation of the Gemini Earn program—with scurrilous claims so that Gemini can dodge litigation defense costs related to Gemini's alleged misconduct, having nothing to do with Defendants.  The Amended Complaint fails as a matter of law for the numerous reasons set forth below.

## STATEMENT OF FACTS[3]

### A.     Gemini and Genesis

This action concerns a digital-asset lending arrangement between Gemini and Genesis (not DCG or Mr. Silbert).  Prior to its bankruptcy in January 2023, Genesis's business consisted of borrowing digital assets from others and relending those assets to third parties at higher interest rates than the original loan.  AC ¶ 24.  Genesis launched its lending business in 2018 and rose to prominence as one of the largest lending businesses in cryptocurrency, with more than $244.4 billion in cumulative loan originations.  *Id.* ¶ 23.

In February 2021, Gemini—a cryptocurrency trust company—entered into a partnership with Genesis whereby it offered its customers the opportunity to lend their digital assets to Genesis and earn interest.  AC ¶ 25.  Gemini marketed this product as the "Gemini Earn" program.  *Id.* Each Gemini customer who wished to participate in the Gemini Earn program executed an MLA among the customer (as lender), Genesis (as borrower), and Gemini (as custodian and authorized agent for the customer).  MLA § XXV.  DCG was explicitly omitted from the MLA.  Each MLA provided that "none of Genesis' parents or affiliates shall have any liability under this Agreement," *id.* § XVII, and that "any and all claims and liabilities against Genesis arising in any way out of this Agreement are only the obligation of Genesis, and not any of its parents or affiliates, including but not limited to Digital Currency Group, Inc."  *Id.* § XVII.  Gemini warranted that it was a sophisticated party, represented by sophisticated counsel.  *Id.* §§ V(d), XXIV.  Genesis separately provided a "'full suite of services global investors require for their digital asset portfolios'"—the Gemini Earn program comprised only one part of Genesis's lending portfolio.  AC ¶ 19.

---

[3] The following facts are drawn from the Amended Complaint, documents incorporated therein, and documents relied on by Gemini in bringing this suit.  *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 168 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).  The Court "may consider . . . statements or documents incorporated into the complaint by reference."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

### B.   Three Arrows Capital

Genesis made money by relending digital assets it borrowed.  One of the third parties who frequently borrowed from Genesis was Three Arrows Capital Ltd. ("3AC").  As of June 2022, 3AC owed approximately $2.3 billion in loans to Genesis.  AC ¶¶ 5, 40, 44.  Gemini alleges that part of 3AC's borrowing strategy involved Grayscale Investments, LLC ("Grayscale"), a DCG-owned company that sponsored and managed an investment fund, the Bitcoin Trust.  *Id.* ¶¶ 22, 46.  Accredited investors could obtain shares in the Bitcoin Trust by contributing digital assets (bitcoin) to the trust, and those shares could be bought and sold on the open market.  *Id.*

According to Gemini, 3AC borrowed digital assets from Genesis in order to contribute bitcoin to the Bitcoin Trust in exchange for shares in the trust.  AC ¶ 46.  After a mandatory six-month holding period, 3AC could sell those shares on the open market and, if the trading price for the shares exceeded the price of the bitcoin 3AC had contributed to the Bitcoin Trust, earn a profit.  *Id.* ¶¶ 46–47.  This strategy only worked, however, so long as 3AC earned more from selling its shares in the Bitcoin Trust than it had to repay its lenders.  Eventually, however, prices for shares in the Bitcoin Trust fell below the prices for bitcoin.  *Id.* ¶ 49.

In June 2022, 3AC was called upon by its lenders to post additional collateral for its outstanding debt, but was unable to do so.  AC ¶¶ 40, 42–43.  3AC thereafter commenced liquidation proceedings in the British Virgin Islands.  *Id.* ¶ 42.  At the time, 3AC owed Genesis $2.36 billion, a sum Genesis had little hope of recovering.  *Id.* ¶ 44.  After foreclosing on collateral, Genesis was left with an unpaid debt from 3AC of approximately $1.2 billion.  *Id.* ¶¶ 5, 44.

### C.   Genesis's Financial Condition Following 3AC's Demise

On June 17, 2022, Genesis advised its lenders that a "large counterparty" had failed to meet a margin call and that Genesis would "'actively pursue recovery on any potential residual loss through all means available.'"  AC ¶ 41.

DCG is the indirect parent of Genesis, AC ¶¶ 17, 20, with its own separate executive and management teams.  On June 30, 2022, DCG exchanged a $1.1 billion promissory note, with 1% annual interest and a ten-year maturity (the "Note"), for Genesis's approximately $1.2 billion account receivable from 3AC.  Ex. B (Note).  The Note provided for DCG to pay Genesis any future proceeds received from 3AC.  *Id.* § 1.6.  On July 6, 2022, a Genesis representative Tweeted:  "'DCG has assumed certain liabilities of Genesis related to this counterparty to ensure we have the capital to operate and scale our business for the long-term.'"  AC ¶ 43 (emphasis omitted).

Following execution of the Note, Genesis communicated directly with Gemini and other lending counterparties regarding its financial condition.  AC ¶¶ 53–54, 63–81, 85–89, 94–97, 104.  Genesis accounted for the Note as a $1.1 billion "[r]eceivable from related part[y]" in the financial records it shared with Gemini and others.  *Id.* ¶¶ 75, 80, 97.  DCG was excluded from the vast majority of these communications, and was not an active participant in any (just copied on two emails referenced in the Amended Complaint).

Gemini alleges only a single relevant interaction between it and Defendants:  an October 2022 lunch meeting between DCG's CEO (Defendant Barry Silbert) and Gemini's co-founder (Cameron Winklevoss).  AC ¶ 109.  The purpose of that meeting, Gemini alleges, was for the two to discuss the Gemini Earn program, "ways to take advantage of the crypto winter," and opportunities "to collaborate closely in the future."  *Id.* ¶¶ 108, 117.  Silbert allegedly told Winklevoss that Genesis "needed sufficient time to effect an orderly unwinding of its 'complex' loan book," and that difficulties in terminating the Gemini Earn program were attributable to "a mismatch in the timing of Genesis's loan positions."  *Id.* ¶ 114.  Gemini claims that, following this meeting, it decided to "delay the termination of the Gemini Earn Program."  *Id.* ¶ 118.

The only allegation remotely connecting DCG to the Gemini Earn program is that, on November 10, 2022, DCG, Genesis, and Gemini executed an agreement under which DCG agreed to transmit additional collateral to Genesis *for the benefit of Gemini Earn lenders* (the "Tripartite Agreement"). AC ¶ 119. DCG thereafter transferred "31,180,804 shares of GBTC (valued in excess of $626.1 million as of July 6, 2023) to Genesis." *Id.*

### D.      Genesis's Bankruptcy and Resulting Lawsuits

In November 2022, the cryptocurrency exchange FTX unexpectedly unraveled. AC ¶ 8. Shortly thereafter, Genesis disclosed its financial exposure to FTX. *Id.* Gemini Earn lenders began recalling their loans, putting severe strain on Genesis's short-term liquidity. *Id.* On November 16, 2022, Genesis suspended all withdrawals of borrowed cryptocurrency, including assets it had borrowed through Gemini Earn. *Id.* ¶¶ 8, 122–23.

On January 19, 2023, Genesis filed a petition for Chapter 11 bankruptcy relief. AC ¶ 124. Additionally, unable to access their cryptocurrency assets held by Genesis, Gemini Earn lenders filed several lawsuits against Gemini, alleging a variety of misconduct arising from the lending relationship memorialized in the MLAs. *See, e.g.*, *id.* ¶ 126 nn.11–12. The Securities and Exchange Commission also commenced an enforcement action against Gemini. *See id.* ¶ 126 n.13.

### E.      Procedural History

On July 7, 2023, Gemini commenced this action in New York state court. In essence, Gemini alleges that Genesis misled it as to Genesis's financial condition following the 3AC liquidation proceedings, and seeks to impute that alleged fraud to Defendants. Following timely removal to this Court, Defendants moved to dismiss the complaint on August 10, 2023. *See* Dkt. No. 16. On September 14, 2023, Gemini filed an amended complaint. But instead of addressing the merits of Defendants' motion, Gemini has simply added conclusory allegations entitled to no presumption of truth, *see* AC ¶ 16 (alleging Silbert benefits from "gains realized by DCG and its

subsidiaries"), *id.* ¶ 105 (alleging DCG must have known of Genesis's financial condition), a reference to a loan from Genesis to a *different* DCG subsidiary that has no apparent connection to any of the claims asserted, *id.* ¶ 9, the name of another Genesis depositor (Bitvavo Custody B.V. ("Bitvavo")) whom Gemini had previously left unidentified, *id.* ¶ 54, and a list of the lawsuits filed against Gemini by its depositors, *id.* ¶ 126 nn.11–12.  As set forth below, none of the proffered amendments cure the significant pleading deficiencies identified in Gemini's allegations.

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6), Gemini must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court should not "'draw argumentative inferences in the plaintiff's favor'" or "'accept as true a legal conclusion couched as a factual allegation.'" *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  Nor must the Court accept any allegation contradicted by documents incorporated into the complaint.  *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

Rule 9(b) "sets forth a heightened pleading standard for allegations of fraud," which requires that fraud be pled with "particularity." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  A complaint alleging a fraud claim must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (quotation marks omitted).

## ARGUMENT

The principal problem with Gemini's inflammatory and factually baseless allegations is that they have very little to do with Defendants.  Taken down to its actual substance, the Amended Complaint identifies just *one* allegedly false representation by Defendants to Gemini—Silbert's statements at the October 2022 lunch with Winklevoss.  And as to those statements, Gemini does not actually allege that anything Silbert said was actionably false.  Instead, it just repeats its claim

that Genesis was insolvent, pre-supposes that Defendants knew and omitted that fact, and avers that it was incumbent upon them to apprise Gemini accordingly.  It was not.

The remaining allegations relate to alleged misrepresentations by *Genesis*.  But DCG and Genesis are separate companies, and Gemini offers no theory that would allow the alleged misrepresentations by Genesis—that are not even described with particularity—to be imputed to DCG.  Gemini's amended allegations do nothing to remedy this defect.

## I.    GEMINI FAILS TO ADEQUATELY AND PARTICULARLY ALLEGE FRAUD BY DEFENDANTS

To withstand dismissal on its fraud claim against Defendants, Gemini must adequately allege "(1) a material misrepresentation or omission of fact (2) made by [a] defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."  *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006).  Gemini fails to adequately plead even one element of its claim, much less all of them.

### A.    Gemini Fails to Plead Any Actionable Misrepresentations by Defendants

#### 1.    None of the Statements by Defendants Are Actionable

Stripping out the allegations regarding misrepresentations allegedly made by *Genesis*— which comprise the vast majority of the Amended Complaint—Gemini alleges just *one* misrepresentation by Defendants to Gemini.  This does not remotely suffice to plead fraud.

The Amended Complaint alleges that in his lunch with Winklevoss, Silbert stated that "Genesis simply needed sufficient time to effect an orderly unwinding of its 'complex' loan book, and that any difficulty that the termination of the Gemini Earn Program would cause for Genesis was merely a mismatch in the timing of Genesis's loan positions."  AC ¶ 114.  The problem is that even after amending its pleading, Gemini does not actually allege what about these statements was supposedly false—Gemini does not dispute that Genesis needed sufficient time to unwind its

complex loan book, and its only claim regarding the "mismatch" in timing is that the "weighted average duration of Genesis's outstanding loans" was 765 days, *id.* ¶ 116, a metric that says nothing about which and what amount of loans were in fact coming due over the next several months, *see Zutty v. Rye Select Broad Mkt. Prime Fund, L.P.*, 2011 WL 5962804, at *10 (N.Y. Sup. Ct. Apr. 15, 2011) (fraud claim dismissed where "plaintiffs have alleged no facts sufficient to demonstrate that any of the statements [were] false when made").

Moreover, these statements are simply not the kind of assertions of objective fact capable of verification necessary for a fraud claim. *See In re Refco Inc. Sec. Litig.*, 2010 WL 11500542, at *22 (S.D.N.Y. Oct. 22, 2010) (dismissing claim where alleged misstatements were "vague," "imprecise," and "subject to multiple interpretations"), *adopted by* 2011 WL 6097724 (S.D.N.Y. Dec. 7, 2011). Silbert's expectations about the eventual unwinding of Genesis's loan book are non-actionable beliefs that cannot support a fraud claim. *See, e.g.*, *Yablon v. Stern*, 161 A.D.3d 594, 594–95 (N.Y. App. Div. 2018) (deeming "non-actionable" the "opinion of defendant as to his entity's resources and capability of undertaking [a project] sought by plaintiffs").

Gemini nonetheless asserts in conclusory fashion that these statements were false because "Genesis had a gaping hole in its balance sheet" owing to the 3AC losses. AC ¶ 115. But that does not contradict Silbert's alleged statements. Gemini cannot show falsity simply by reciting its conclusory assertions about Genesis's financial health, nor can Gemini show that the terms of the Note, pursuant to which DCG had exchanged Genesis's uncollectable receivable from 3AC for an enforceable promissory note, in any way undermine the veracity of Silbert's representations. Importantly, Gemini does not identify any allegedly false statements by Defendants about the terms of the Note—rather, Gemini only asserts that Silbert knew of the Note's terms and therefore should have doubted Genesis's financial health more generally. *See id.* ¶¶ 110, 115. But the

Note's terms do not establish that any of Silbert's statements were false, let alone Silbert's knowledge of their falsity. *See In re Duane Reade Inc. Sec. Litig.*, 2003 WL 22801416, at *10 (S.D.N.Y. Nov. 25, 2003) ("[M]ere speculation is inadequate to plead knowledge of allegedly omitted facts." (quotation marks omitted)), *aff'd sub nom. Nadoff v. Duane Reade, Inc.*, 107 F. App'x 250 (2d Cir. 2004). Gemini's similarly unremarkable allegations that DCG reported consolidated financials for its subsidiaries and that DCG had awareness of Gemini's equity value provides nothing more than speculation. AC ¶¶ 103–05. Indeed, any possible inference that Defendants knew of Genesis's insolvency is negated by the fact that, just days before Genesis shuttered its doors, DCG executed the Tripartite Agreement, pledging $600 million worth of assets as collateral to Genesis (for Gemini's benefit). *Id.* ¶ 119.

Gemini also alleges that in July 2022, DCG's Chief Operating Officer ("COO") had a phone call with Bitvavo—"another Genesis depositor"—in which the COO purportedly made false statements. AC ¶¶ 85, 91. But the statements were not made to Plaintiff Gemini, and New York law does not "extend the reliance element of fraud to include a claim based on the reliance of a third party, rather than the plaintiff." *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 829 (2016); *see also Sec. Inv'r Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 72 (2d Cir. 2000) (rejecting claim because plaintiffs "never received" the alleged misrepresentation). Moreover, Gemini's allegations about the content of the call clearly are not based on personal knowledge, and Gemini does not explain the factual basis for these allegations. *See Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1003 (2d Cir. 1988) (fraud allegations "must be accompanied by a statement of facts upon which the belief is founded").

### 2.   Defendants Are Not Liable for Alleged Misrepresentations by Genesis

Gemini cannot salvage its fraud claim by relying on statements allegedly made by Genesis, and *not* Defendants. These include: (1) Genesis's purported representations concerning risk

management (AC ¶¶ 29–32); (2) Genesis tweets concerning its 3AC exposure and financial position (*id.* ¶¶ 41, 43); (3) communications in July 2022 among Genesis, Gemini, and Bitvavo concerning Genesis's exposure to 3AC and its financial position (*id.* ¶¶ 53–54, 63–81, 85–89, 94–96); (4) an August 16, 2022 email containing Genesis's updated financial reports (*id.* ¶¶ 97, 104); and (5) other unspecified communications (*id.* ¶¶ 37, 52, 82).[4]  Setting aside that Gemini does not allege with particularity anything false or misleading about Genesis's statements, Defendants were not the "maker" of any of these statements, and Gemini's single allegation that Defendants "caused" Genesis to issue misleading financial statements is conclusory and made without any factual basis.  *Woori Bank v. RBS Secs., Inc.*, 910 F. Supp. 2d 697, 702 (S.D.N.Y. 2012); *see also Kirschner ex rel. Millennium Lender Claim Tr. v. J.P. Morgan Chase Bank, N.A.*, 2020 WL 9815174, at *8 (S.D.N.Y. Dec. 1, 2020) ("[C]onclusory language . . . does not support Plaintiff's theory that [defendants] controlled [the third party's] statements."), *adopted by* 2021 WL 4499084 (S.D.N.Y. Sept. 30, 2021), *aff'd*, 2023 WL 5439495 (2d Cir. Aug. 24, 2023); AC ¶ 6.

Gemini nonetheless baldly asserts that Defendants are liable for failing to *correct* Genesis's statements regarding "the nature of DCG's support" and Genesis's financial condition.  AC ¶¶ 41–43, 60, 84, 95–98, 109–14.  That contention runs headlong into the "basic tenet of American corporate law" holding that "the corporation and its shareholders are distinct entities."  *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003); *see also Beck v. Consol. Rail Corp.*, 394 F. Supp. 2d 632, 637 (S.D.N.Y. 2005) (same under New York law).  While there are limited exceptions to this rule, none applies here, and Gemini does not allege otherwise.  Nor could it, as Gemini agreed in the MLAs that DCG would have no liability for the conduct of Genesis.  *See* MLA § XVII.

---

[4] Other statements allegedly made by Genesis were to unnamed third parties, *see, e.g.*, AC ¶¶ 37, 52, 55, and are non-actionable for that reason, *see Yencho v. Chase Home Fin. LLC*, 2015 WL 127721, at *3 (S.D.N.Y. Jan. 8, 2015) ("Factual allegations must reflect the 'who, what, when, where and how of the alleged fraud.'").  And as set forth below, any such misrepresentations are not imputable to Defendants.  *See infra* pp. 13–14.

Gemini cannot sidestep this law by framing its allegations in terms of a failure to correct. Silence is "'not actionable under the common law of fraud and deceit unless there is a duty to speak.'" *Kirschner*, 2020 WL 9815174, at *10. Such duty arises only where the parties stand in a fiduciary relationship, "or 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 217 (S.D.N.Y. 2019). Gemini does not allege a fiduciary relationship between it and Defendants, and Gemini offers nothing beyond bare conclusory allegations that Defendants knew Gemini was "acting on the basis of mistaken knowledge."

Moreover, even if Defendants had superior knowledge and knew Gemini was acting on it, "[t]he duty to disclose superior knowledge normally 'arises in the context of business negotiations where parties are entering a contract,'" *In re Fyre Festival*, 399 F. Supp. 3d at 218 (quoting *Lerner*, 459 F.3d at 292), not simply anytime a party allegedly knows something someone else does not. The notion that DCG's officers were required to comb through pages of emails discussing myriad topics that were not even addressed to them to search out and correct any hypothetical misrepresentations by a legally distinct subsidiary is beyond the pale.

Gemini makes the unsupported claim that DCG's provision of approximately $600 million worth of collateral to Genesis in the Tripartite Agreement—*for the benefit of Gemini Earn users*—shortly after Silbert's lunch with Winklevoss somehow gave rise to a legal obligation by Defendants to "correct" representations regarding Genesis's losses. AC ¶¶ 119–20. But "'[a] duty to speak cannot arise simply because two parties may have been on opposite sides of a bargaining table when a deal was struck between them.'" *Tellez v. OTG Interactive, LLC*, 2016 WL 5376214, at *5 (S.D.N.Y. Sept. 26, 2016). Gemini does not even attempt to connect any of Genesis's allegedly false statements to the representations made by Defendants in connection with the

Tripartite Agreement.[5]

### B.    Gemini Fails to Plead a Strong Inference of Scienter

Gemini has also failed to adequately plead any "facts that give rise to a *strong inference* of fraudulent intent." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 634 (2d Cir. 1996).  "An inference is 'strong' if it is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Tradeshift*, 2021 WL 4463109, at \*4; *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 75 (S.D.N.Y. 2010) ("The scienter element for [common law fraud] is essentially the same as that under federal securities laws."), *aff'd*, 485 F. App'x 461 (2d Cir. 2012).  A strong inference of scienter must be established "'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27–28 (2d Cir. 2014).  Gemini has done neither.

Gemini's efforts to plead motive and opportunity fail, because the Amended Complaint alleges no "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Harborview Value Masterfund, L.P. v. Freeline Sports, Inc.*, 2012 WL 612358, at \*9 (S.D.N.Y. Feb. 23, 2012) (quotation marks omitted).  Gemini claims that Defendants were motivated to keep Genesis afloat to allow Genesis to continue lending digital assets to 3AC, which could in turn purchase shares in the Bitcoin Trust, increasing the management fees earned by Grayscale.  AC ¶ 3.  The threshold problem with this theory is that it once again conflates DCG with its subsidiaries—Grayscale is a separate entity with its own revenue stream,

---

[5] Gemini also comes nowhere close to alleging that Defendants had "knowledge of [] falsity."  *In re Fyre Festival*, 399 F. Supp. 3d at 212–13; *see also Tradeshift, Inc. v. Smucker Servs. Co.*, 2021 WL 4463109, at \*6 (S.D.N.Y. Sept. 29, 2021) (dismissing fraud claim where plaintiff failed to allege defendant "knew that the representations were false when made").  Although Gemini conflates DCG with its subsidiary, Genesis's knowledge is not imputable to DCG.  *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) ("Fraud cannot be inferred simply because [parent] might have been more curious or concerned about the activity at [subsidiary].").

and "the mere existence of a parent-subsidiary or affiliate relationship is not on its own sufficient
to impute the scienter of the subsidiary to the parent or affiliate." *Valentini v. Citigroup, Inc.*, 837
F. Supp. 2d 304, 317 (S.D.N.Y. 2011); *see also Defer LP v. Raymond James Fin., Inc.*, 654 F.
Supp. 2d 204, 218 (S.D.N.Y. 2009) ("[T]here is no . . . rule requiring the imputation of a
subsidiary's knowledge to its parent . . . .  Nor should there be.").

Moreover, "motive to maintain the appearance of corporate profitability, or of the success
of an investment," is not sufficient for scienter.  *Chill*, 101 F.3d at 268; *see also Cohen v.
Stevanovich*, 722 F. Supp. 2d 416, 429 (S.D.N.Y. 2010) (rejecting profit-seeking motive as basis
for fraudulent intent (collecting cases)).  That is equally true with respect to Silbert's "personal
ownership stake in DCG," AC ¶ 48, as "stock ownership does not provide sufficient motive to
sustain the pleading burden under Rule 9(b)," *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124,
1131 (2d Cir. 1994); *see also Defer*, 654 F. Supp. 2d at 217 ("An allegation that defendants' motive
was merely to increase or maintain profit such as this is insufficient.").  And, even if DCG and
Silbert could be said to have a motive to keep Genesis running, that does not establish intent *to
defraud*, particularly in view of DCG's $600 million pledge of collateral to Genesis. *See* AC ¶ 119.

Gemini added in its Amended Complaint new allegations that Defendants "caused"
Genesis to loan $355 million of bitcoin to a different DCG subsidiary in June 2022.  AC ¶ 9.
Gemini offers no factual allegations in support of its bare claim that Defendants "caused" this
transaction—no explanation of who at DCG contacted who at Genesis or on what date and what
action supposedly "caused" Genesis to extend this loan.  And beyond that, there is no alleged
connection between the loan and any of the supposed wrongdoing by Genesis:  Gemini admits that
nearly 75% of the loan was repaid to Genesis within months of its execution.  *Id.*  Nothing about
this alleged loan comes anywhere close to establishing scienter.

Gemini's theory of conscious misbehavior and recklessness fares no better. "Recklessness is 'at the least, an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *Saltz*, 782 F. Supp. 2d at 71. But despite its broad and unsubstantiated allegations against Defendants, Gemini alleges no actual *facts* demonstrating that Defendants were engaged in "highly unreasonable" conduct. Critically missing are any particular facts indicating that Defendants knew of but ignored red flags regarding Genesis's representations to Gemini. *See id.*; *Musalli Factory for Gold & Jewelry v. JPMorgan Chase Bank*, 261 F.R.D. 13, 22 (S.D.N.Y. 2009) (dismissing claim where plaintiff failed to allege why defendants needed to be suspicious of a third party's wrongful conduct, even if they were aware of the conduct), *aff'd*, 382 F. App'x 107 (2d Cir. 2010).

Gemini's allegation that the "basic nature" of the Note was fraudulent—whatever that means—is premised on no particularized (or even general) allegations of *fact* as to why that would be the case. AC ¶ 101. Gemini muses about what kind of response from DCG would have been most "rational" under the circumstances, but Gemini's judgment about what DCG ought to have done as a business matter does nothing to show scienter. Gemini takes issue with how Genesis represented the value of the Note to lenders, *see id.*, but there are no well-pled allegations that DCG had any involvement with how Genesis accounted for the Note on Genesis's books. The Amended Complaint glaringly omits any allegations of communications between Genesis and DCG regarding an alleged plan to misrepresent the Note, or any particularized facts demonstrating that DCG issued the Note to knowingly further such a plan.

## C. Gemini Fails to Plead Actionable Damages and Loss Causation

The Amended Complaint also fails to plead any cognizable harm or any causal connection between the purported fraud here and the (non-cognizable) harm Gemini claims to have suffered.

The sole theory of damages alleged in the Amended Complaint is attorneys' fees and

expenses allegedly incurred by Gemini defending against lawsuits related to its promotion and operation of the Gemini Earn program (purportedly $6.5M). AC ¶¶ 12, 125–28. However, a plaintiff may recover only "the actual pecuniary loss sustained as the direct result of the wrong." *Starr Found. v. Am. Int'l Grp., Inc.*, 76 A.D.3d 25, 27 (N.Y. App. Div. 2010) (quotation marks omitted). Even a cursory examination of the claims in those lawsuits reveals that they are attributable to Gemini's own alleged misconduct, having nothing to do with Defendants. The Gemini Earn plaintiffs allege that Gemini, as agent for Gemini Earn users, unlawfully sold unregistered securities and/or misrepresented to Gemini Earn users that: (1) they could "[r]edeem [their] assets at any time;" (2) "our partners are required to return your funds to you within five business days;" (3) Genesis was "vetted through a risk management framework;" and (4) "Gemini reviewed Genesis' financial statements and verified that the lender's loans are overcollateralized." *See, e.g.*, *Berdugo v. Gemini Tr. Co.*, No. 23-cv-60057 (S.D. Fla.), Dkt. No. 7 ¶¶ 8, 69–74; *Picha v. Gemini Tr. Co.*, No. 22-cv-10922 (S.D.N.Y.), Dkt. No. 47 ¶¶ 4, 109–22. DCG is not even named in these lawsuits and the allegations bear no causal connection to Defendants' alleged fraud here.[6] Indeed, the alleged misconduct pre-dates—by years—any action by DCG alleged in the Amended Complaint. There is no basis in law or fact supporting Gemini's attempt to shift its litigation fees to DCG. Similarly, although Gemini claims it has incurred fees in Genesis's bankruptcy case, *see* AC ¶ 127, Gemini does not claim that Defendants did anything to *render* Genesis bankrupt, or offer any explanation as to why Defendants should bear Gemini's costs associated with Genesis's Chapter 11 proceeding.[7]

---

[6] *Moeller-Bertram v. Gemini Tr. Co.*, No. 23-cv-2027 (S.D.N.Y.) is the only action in which either DCG or Silbert is a named co-defendant with Gemini. *Moeller-Bertram* asserts just one count against only DCG for control person liability arising from Gemini's alleged offer or sale of unregistered securities—allegations wholly irrelevant to the theory of fraud asserted in the Amended Complaint.

[7] Gemini also seeks damages for fees incurred in "confidential" proceedings and two actions that were apparently filed

Gemini's damages theory is also premised on impermissible speculation.  Gemini asks this Court to infer that had it known of Genesis's alleged insolvency, it would have terminated the Gemini Earn program earlier, Genesis would have had the funds to repay Gemini's lenders (notwithstanding that Gemini claims Genesis was insolvent at all relevant times), *and* Gemini Earn customers (and the SEC) would not have sued Gemini for any of the unrelated claims they have now asserted.  AC ¶ 128.  "New York law bars claims that require a factfinder to cut through this many 'layers of uncertainty' and speculation."  *AHW Inv. P'ship v. Citigroup Inc.*, 980 F. Supp. 2d 510, 527 (S.D.N.Y. 2013), *aff'd*, 661 F. App'x 2 (2d Cir. 2016) (quoting *Starr*, 76 A.D.3d at 30).  "[T]he general tendency of the law, in regard to damages at least, is not to go beyond the first step," *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010) (quotation marks omitted), and a theory of causation and damages that "depends on an attenuated chain of events" is not sufficient, *Bank Hapoalim B.M. v. WestLB AG*, 121 A.D.3d 531, 535 (N.Y. App. Div. 2014).  Moreover, interposing all of this is the intervening—and unforeseeable—collapse of FTX, an event which cannot possibly be attributed to Defendants and which severs any plausible chain of causation. *See In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 568 F. Supp. 2d 349, 365 (S.D.N.Y. 2008) (plaintiffs must show their "losses are due to the alleged fraud, rather than to intervening events").

### D.   Gemini's Conspiracy Theory Fails

Gemini attempts to bolster its deficient claim by vaguely gesturing toward a theory of conspiracy liability, *see, e.g.*, AC ¶ 136, but that effort fails.

*First*, a conspiracy claim that relies on "essentially identical" allegations as those set forth in a parallel aiding-and-abetting claim should be dismissed as "duplicative."  *In re Platinum-*

---

in small claims court.  AC ¶ 126 nn.12–13.  Gemini offers no connection between these proceedings and the Amended Complaint.  Equally absurd is Gemini's request for fees incurred in an enforcement action brought by the SEC, which alleges that Gemini offered or sold unregistered securities from the outset of the program, long before the theory of fraud alleged in the Amended Complaint occurred.

*Beechwood Litig.*, 426 F. Supp. 3d 14, 21 (S.D.N.Y. 2019). Here, Gemini's theory of conspiracy is premised on the same allegations and underlying tort as its aiding-and-abetting claim against Defendants, and thus must be dismissed as duplicative.

*Second*, Gemini in any event fails to plead the basic elements of a conspiracy, which requires more than an allegation of direct fraud. To plead conspiracy liability, Gemini must adequately allege the underlying fraud *and* four other elements: "'(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.'" *Ritchie Cap. Mgmt., LLC v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 339 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016); *see also Heinert v. Bank of Am. N.A.*, 835 F. App'x 627, 632 (2d Cir. 2020) (conspiracy "requires the same allegations of actual knowledge" as aiding and abetting).

The Amended Complaint alleges no facts plausibly establishing the existence of an unlawful agreement between Defendants and Genesis, and the "bare assertion" of a conspiracy is insufficient. *Twombly*, 550 U.S. at 556; *LeFebvre v. N.Y. Life Ins. & Annuity Corp.*, 214 A.D.2d 911, 912 (N.Y. App. Div. 1995) (dismissing claim where plaintiff alleged no facts to "support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose"). Gemini also does not allege an "overt act" in furtherance of the conspiracy—it points to DCG's execution of the Note, but the "mere fact that a defendant's otherwise lawful activities may have assisted another in pursuit of guileful objectives is not a sufficient basis for a finding that he or she conspired to defraud." *LeFebvre*, 214 A.D.2d at 913. Gemini is left with allegations that Defendants should have corrected Genesis's allegedly misleading statements, but "[f]ailure to recognize or prevent fraud does not constitute an overt act." *Heinert*, 835 F. App'x at 632. Accordingly, Gemini's conspiracy allegations fail to breathe life into its fraud claim.

II.     **GEMINI FAILS TO PLEAD AIDING AND ABETTING FRAUD WITH
        PARTICULARITY**

Perhaps recognizing it cannot sustain a claim for direct fraud against Defendants, Gemini

seeks to do indirectly what it cannot do directly, alleging a claim for aiding and abetting against

Defendants.  *See* AC ¶¶ 138–40.  Gemini does not articulate the basis for this theory, except in

broad strokes that largely recite the elements of liability.  But on whatever factual allegations it is

premised, this claim fares no better than the first.  To withstand dismissal, Gemini must plead:

"'(1) the existence of a fraud; (2) [the] defendant's knowledge of the fraud; and (3) that the

defendant provided substantial assistance to advance the fraud's commission.'"  *Geoffrey A. Orley*

*Revocable Tr. v. Genovese*, 2020 WL 611506, at *12 (S.D.N.Y. Feb. 7, 2020).  "[T]he particularity

requirements of Rule 9(b) apply to claims of aiding and abetting fraud no less than to direct fraud

claims."  *Filler v. Hanvit Bank*, 156 F. App'x 413, 417 (2d Cir. 2005).

A.     **Gemini Fails to Plead Actual Knowledge of Fraud**

The Amended Complaint is devoid of factual allegations necessary to support a "strong

inference" of Defendants' actual knowledge of the alleged fraud, a prerequisite for

aiding-and-abetting liability.  *Lerner*, 459 F.3d at 292–93.  "Constructive knowledge is not

sufficient, nor is 'a lower standard such as recklessness or willful blindness.'"  *Berdeaux v.*

*OneCoin Ltd.*, 561 F. Supp. 3d 379, 412 (S.D.N.Y. 2021) (quotation marks omitted).  Thus, "'[t]he

burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy

one.'"  *Chemtex, LLC v. St. Anthony Enters., Inc.*, 490 F. Supp. 2d 536, 546 (S.D.N.Y. 2007).

As set forth above, *see supra* pp. 11–17, Gemini's allegations of knowledge are uniformly

deficient.  Gemini offers a slew of conclusory assertions that Genesis acted "with the knowledge

and active involvement of DCG," AC ¶ 6; *see also id.* ¶¶ 3, 21, 62, 84–85, 91, 115, but these

allegations amount to no more than legal conclusions masquerading as facts, *see Krys v. Pigott*,

749 F.3d 117, 130 (2d Cir. 2014) (conclusory statements of actual knowledge are insufficient to support a claim for aiding and abetting fraud). This high-level approach to pleading is decidedly inadequate for alleging fraud. *See Berdeaux*, 561 F. Supp. 3d at 413 (suspicions or ignorance of obvious warning signs "do not give rise to an inference of actual knowledge"); *Nat'l Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 147 (N.Y. App. Div. 1987) ("bare[] allegation[s]" that the defendants "had or should have had [] knowledge" are "plainly not sufficient").

Gemini's claim that Defendants were put on "notice" of Genesis's alleged fraud by way of emails on which DCG employees were copied (AC ¶¶ 94–98) is no substitute for plausible allegations of actual knowledge, *see Ryan v. Hunton & Williams*, 2000 WL 1375265, at *9 (E.D.N.Y. Sept. 20, 2000) ("Allegations that [the defendant] suspected fraudulent activity, however, do not raise an inference of actual knowledge . . . ."). Moreover, most of these "notice" allegations relate to correspondence with parties other than Gemini. *See, e.g.*, AC ¶¶ 94–98. But the relevant knowledge is knowledge of the fraud allegedly *perpetrated on Gemini*, not "conduct that might have harmed others." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 545 (S.D.N.Y. 2009). Any allegations regarding alleged misrepresentations to *other* parties are irrelevant.

Finally, Gemini's assertion that DCG and Genesis "agreed to . . . conceal the DCG Promissory Note's existence and its terms from Genesis's depositors" is nothing beyond unadorned and factually unsupported accusation. *See, e.g.*, AC ¶ 107. Defendants had no way of knowing the entire breadth of information Genesis had shared with Gemini regarding the Note, and Gemini does not allege otherwise. And as discussed above, there is no support for Gemini's bare claim that the terms of the Note were inherently fraudulent. *See supra* pp. 17.

### B.    Gemini Fails to Plead Substantial Assistance

Gemini also has not adequately alleged substantial assistance by Defendants. To plead substantial assistance, Gemini must allege "facts from which the Court can infer that (1) the

defendant affirmatively assisted, helped conceal, or failed to act when required to enable the fraud to proceed; and (2) 'the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated.'"  *Berdeaux*, 561 F. Supp. 3d at 416.  Gemini has done neither.

### 1.   Gemini Fails to Allege That Defendants Affirmatively Assisted in Any Fraud

Nowhere in its Amended Complaint does Gemini actually identify what conduct it claims constitutes "substantial assistance" by Defendants, and that alone is reason to dismiss this claim. But to the extent Gemini seeks to repurpose its insufficient allegations of fraud in service of its aiding-and-abetting claim, that attempt fails.

Gemini alleges that the execution of the Note "demonstrates that DCG was a willing participant in the scheme to mislead."  AC ¶ 101.  There are no factual allegations to support this claim.  *See supra* pp. 17, 20.  Whatever Gemini believes would have been most "rational" for DCG to do, that is irrelevant to whether this business transaction constituted substantial assistance to *fraud*.  And absent specific allegations describing Defendants' direct participation in the purported fraud, Gemini's aiding-and-abetting claim fails.  *See JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 257 (S.D.N.Y. 2005) (suggesting there should be "'an extraordinary motivation to aid the fraud'");  *Chemtex*, 490 F. Supp. 2d at 547 (plaintiff must adduce evidence that the defendant "either affirmatively assisted" or "helped to conceal" the alleged fraud).

Nor can Gemini rely on its conclusory allegations that Defendants "collaborated" with Genesis to prepare responses to inquiries from Bitvavo.  AC ¶¶ 94, 106.  Gemini does not say what Defendants are alleged to have actually done in connection with the responses, and a generalized claim that Defendants were involved in the responses is not sufficient.  *See Morin v. Trupin*, 711 F. Supp. 97, 113 (S.D.N.Y. 1989) ("[T]he substantial assistance must relate to the preparation or dissemination of the document itself.").

23

And finally, as with its infirm allegations of direct fraud, aiding-and-abetting liability cannot be premised on Defendants' alleged failure to correct Genesis's alleged misstatements, because Defendants owed no fiduciary duty to Gemini to do so.  *See Lerner*, 459 F.3d at 295 ("'[M]ere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.'"); *SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, at *8 (S.D.N.Y. May 26, 2016) ("Defendants' alleged failure to reveal the fraud cannot support a claim for aiding and abetting where, as here, the [] Defendants owed no fiduciary duty directly to plaintiff . . . ."), *aff'd sub nom. SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018).

Accordingly, Gemini's allegations regarding Silbert's alleged failure to disclose information about Genesis's solvency in his meeting with Winklevoss, *see* AC ¶¶ 7, 108–14, and regarding correspondence on which DCG employees were copied, *see id.* ¶¶ 94, 97–99, are not sufficient to allege affirmative assistance, *see Chemtex*, 490 F. Supp. 2d at 547 ("'[I]naction on the part of the alleged aider and abettor ordinarily should not be treated as substantial assistance . . . except when . . . it was in conscious and reckless violation of a duty to act.'"); *see also supra* pp. 13–14.  A defendant's "[m]ere presence, and passive receipt of email, cannot, by definition, constitute affirmative assistance." *Winnick*, 406 F. Supp. 2d at 258.

### 2.     Gemini Fails to Plead That Defendants Proximately Caused Its Injuries

Finally, Gemini's aiding-and-abetting allegations fail for the additional reason that Gemini has failed to adequately allege proximate causation.  As set forth above, Gemini has not alleged causation with respect to the alleged fraud generally.  *See supra* pp. 17–19.  Its allegations of causation arising out of Defendants' alleged aiding and abetting are even weaker.

To plead proximate cause in the context of aiding-and-abetting liability for fraud, Gemini must adequately allege that Defendants' acts were a "'direct or reasonably foreseeable result of

the conduct.'" *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 345 (2d Cir. 2018). "Merely pleading 'but-for' causation is not enough," rather, "'aider and abettor liability re[q]uires the injury to be a direct or reasonably foreseeable result of the conduct.'" *SPV OSUS*, 2016 WL 3039192, at *6; *see also Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp*., 2023 WL 2751049, at *36 (S.D.N.Y. Mar. 31, 2023) (plaintiff must "demonstrate that the damages are not 'so remote as not to be directly traceable to the [tort]' or 'the result of other intervening causes'").

Defendants' conduct is far removed from any injury Gemini has attempted to claim here. By Gemini's own admission, there are a host of other events contributing to its claimed injuries, including (1) numerous alleged misrepresentations by Genesis in which Defendants had no alleged involvement whatsoever, (2) the collapse of FTX, and (3) the decision by third parties to file suit against Gemini. *See, e.g.*, AC ¶¶ 8, 12, 30–37, 55, 73–75. In no sense could it be said that litigation against Gemini was the naturally foreseeable consequence of DCG's execution of the Note or Defendants' alleged silence as to Genesis's communications to third parties. *See Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC*, 479 F. Supp. 2d 349, 371 (S.D.N.Y. 2007) (no proximate causation if "the alleged aider and abettor did not assist in the making or dissemination of th[e] statement"). Gemini's invocation of "but-for" causation, *see* AC ¶ 128, does nothing to establish a direct link between the meager conduct by Defendants that Gemini alleges and the downstream injury it alleges from third-party lawsuits.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety. Because no additional allegations could cure the substantive defects in the Amended Complaint, dismissal should be with prejudice.

Dated:  October 3, 2023                           Respectfully submitted,
        New York, New York

                                                  _/s/ Jonathan D. Polkes_
                                                  _____
Joshua M. Wesneski                                Jonathan D. Polkes
WEIL, GOTSHAL & MANGES LLP                        Caroline Hickey Zalka
2001 M Street NW, Suite 600                       Stefania D. Venezia
Washington, DC 20036                              Dylan L. Ruffi
Tel: (202) 682-7000                               WEIL, GOTSHAL & MANGES LLP
Fax: (202) 857-0940                               767 Fifth Avenue
                                                  New York, NY 10153
                                                  Tel: (212) 310-8000
                                                  Fax: (212) 310-8007

                                                  _Counsel for Defendants Digital Currency_
                                                  _Group, Inc. and Barry Silbert_