**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEMINI TRUST COMPANY, LLC,<br><br>       *Plaintiff*,<br><br>   v.<br><br>DIGITAL CURRENCY GROUP, INC. and BARRY SILBERT,<br><br>       *Defendants*. | Case No. 1:23-cv-06864-LJL [rel. 23-2027]<br><br>Hon. Lewis J. Liman<br><br>ORAL ARGUMENT REQUESTED |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

                  WEIL, GOTSHAL & MANGES LLP
                  767 Fifth Avenue
                  New York, NY 10153
                  Tel: (212) 310-8000
                  Fax: (212) 310-8007

                  *Counsel for Defendants Digital Currency Group, Inc. and Barry Silbert*

November 3, 2023

## TABLE OF CONTENTS

                                                                                                         **Page**

PRELIMINARY STATEMENT ...................................................................................................1
ARGUMENT ...................................................................................................................................2
       I.       GEMINI FAILS TO ADEQUATELY AND PARTICULARLY ALLEGE
               FRAUD .......................................................................................................................2
               A.      Gemini's Conspiracy Theory Fails ..................................................................2
               B.      Gemini Fails to Plead Any Actionable Misrepresentations by
                        Defendants ......................................................................................................6
               C.      Gemini Fails to Plead Actionable Damages and Loss Causation ....................8
       II.      GEMINI FAILS TO PLEAD AIDING AND ABETTING FRAUD ...........................9
       III.     GEMINI'S INFORMAL REQUEST TO AMEND SHOULD BE DENIED .............10
CONCLUSION ..............................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amorosa v. Gen. Elec. Co.*,
  2022 WL 3577838 (S.D.N.Y. Aug. 19, 2022) ........................................................................... 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................................... 3

*Briarpatch Ltd. v. Phx. Pictures, Inc.*,
  312 F. App'x 433 (2d Cir. 2009) ................................................................................................. 6

*Chill v. Gen. Elec. Co.*,
  101 F.3d 263 (2d Cir. 1996) ........................................................................................................ 6

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999) ........................................................................................................ 3

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
  2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) ............................................................................. 7

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*,
  2016 WL 205445 (S.D.N.Y. Jan. 15, 2016) ................................................................................. 9

*In re Food Mgmt. Grp., LLC*,
  380 B.R. 677 (Bankr. S.D.N.Y. 2008) ......................................................................................... 5

*G-I Holdings, Inc. v. Baron & Budd*,
  2004 WL 1277870 (S.D.N.Y. June 10, 2004) ............................................................................. 4

*Heinert v. Bank of Am. N.A.*,
  835 F. App'x 627 (2d Cir. 2020) ............................................................................................ 3, 5

*Hemi Grp., LLC v. City of N.Y.*,
  559 U.S. 1 (2010) ......................................................................................................................... 8

*IKB Int'l S.A. v. Bank of Am. Corp.*,
  584 F. App'x 26 (2d Cir. 2014) ................................................................................................... 6

*Jiajia Luo v. Sogou, Inc.*,
  465 F. Supp. 3d 393 (S.D.N.Y. 2020) .......................................................................................... 7

*JP Morgan Chase Bank v. Winnick*,
  406 F. Supp. 2d 247 (S.D.N.Y. 2005) ....................................................................................... 10

*LeFebvre v. N.Y. Life Ins. & Annuity Corp.*,
    214 A.D.2d 911 (N.Y. App. Div. 1995) ................................................................................3

*Lippe v. Bairnco Corp.*,
    230 B.R. 906 (S.D.N.Y. 1999) .............................................................................................4

*In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*,
    568 F. Supp. 2d 349 (S.D.N.Y. 2008) ..................................................................................9

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
    261 F.R.D. 13 (S.D.N.Y. 2009), *aff'd*, 382 F. App'x 107 (2d Cir. 2010) ..............................10

*Nat'l Westminster Bank USA v. Weksel*,
    124 A.D.2d 144 (N.Y. App. Div. 1987) ...............................................................................5

*Ritchie Cap. Mgmt., LLC v. Gen. Elec. Cap. Corp.*,
    121 F. Supp. 3d 321 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016) ............................4

*Starr Found. v. Am. Int'l Grp., Inc.*,
    76 A.D.3d 25 (N.Y. App. Div. 2010) ...................................................................................8

*Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*,
    2023 WL 2712505 (S.D.N.Y. Mar. 30, 2023) .......................................................................7

*Valentini v. Citigroup, Inc.*,
    837 F. Supp. 2d 304 (S.D.N.Y. 2011) ..................................................................................6

*Yablon v. Stern*,
    161 A.D.3d 594 (N.Y. App. Div. 2018) ...............................................................................7

**Other Authorities**

60A N.Y. Jur. 2d Fraud and Deceit § 181 .......................................................................................9

## PRELIMINARY STATEMENT[1]

Gemini's opposition brief eviscerates its theory of liability against DCG and Mr. Silbert. Indeed, Gemini has abandoned the very foundation on which its Amended Complaint is premised. It no longer argues that Defendants "caused" non-party Genesis to make the alleged misrepresentations, that Defendants had a duty to "correct" Genesis's alleged misrepresentations, or that Defendants had any legally cognizable motive or opportunity to engage in the alleged fraud.

Gemini now focuses its firepower almost entirely on conspiracy, a theory that appears only at the fringes of the Amended Complaint. Stripped of rhetoric, Gemini's conspiracy theory boils down to the assertion that Defendants' execution of a promissory note for the benefit of Genesis—under which Genesis exchanged an *uncollectable* receivable for a *collectable* receivable—is conclusive evidence that Defendants conspired with Genesis to defraud Gemini. Gemini cites no case—*none*—accepting such an argument at any stage of litigation. In fact, Gemini does not cite legal authority for much of anything it asserts: Its entire brief cites just thirteen cases, four of which were cited by Defendants, and the remaining nine of which set forth basic principles of law or are patently inapposite.

Unable to muster any legal authority, Gemini relies on repetition. Much of the opposition simply regurgitates ad nauseam the conclusory allegations in the Amended Complaint, and in particular the refrain that the amorphously fraudulent "nature" of the Note is sufficient on its own to establish each of the demanding elements for fraud and conspiracy. But Gemini's conclusory allegations that the Note is evidence of fraud do not become any truer with recurrence. What the Amended Complaint is missing is *factual* allegations about what Defendants actually did (besides lawfully execute a promissory note for the benefit of Genesis), what they knew, or what they

---

[1] Capitalized terms not defined herein have the same meanings ascribed to them in Defendants' Memorandum of Law in Support of their Motion to Dismiss, Dkt. No. 25 ("Mot.").

intended, that supports a theory of fraud.  At bottom, Gemini's conspiracy claim is supported by nothing beyond conclusory assertions and illogical leaps, and its newly-minted principal theory should be dismissed on that basis.

In a last-ditch effort to cast general aspersions on Defendants, Gemini invokes (and attaches to its opposition) a complaint recently filed by the New York Attorney General ("NYAG").  In almost the same breath, though, Gemini admits that the allegations in the complaint have no bearing on the sufficiency of *its* Amended Complaint.  But perhaps the most glaring defect in Gemini's effort to leverage the NYAG's complaint is that Gemini conspicuously omitted to advise the Court that *it is named as a defendant in that complaint*.  *See* Opp'n Ex. A.  In fact, Gemini is the first named defendant and the clear focus of the NYAG complaint—an entire section of the complaint is dedicated to what the NYAG calls the "Gemini Scheme."  *Id.* ¶¶ 56–115.  And, if anything, the NYAG complaint further supports what Defendants showed in their opening brief: Gemini is responsible for its own defense costs arising out of allegations of its own misconduct.  There is no basis in law or fact to shift those costs to DCG.

The opposition confirms that this lawsuit is simply an attempt to find a solvent defendant for Genesis's alleged fraud and to denigrate the character of Defendants in the process.  After two opportunities, Gemini still has come nowhere close to alleging a fraudulent conspiracy.  The Amended Complaint should be dismissed with prejudice.

## ARGUMENT

## I. GEMINI FAILS TO ADEQUATELY AND PARTICULARLY ALLEGE FRAUD

### A. Gemini's Conspiracy Theory Fails

Gemini's conspiracy theory is pulled from the periphery of the Amended Complaint, which vaguely gestures to such a theory in only a few paragraphs, and includes just two direct allegations of conspiracy, both of which are entirely conclusory.  *See* AC ¶¶ 135–36.  In its opposition brief,

however, Gemini has made conspiracy the center of its case, dropping most of the core legal theories articulated in the Amended Complaint. This gambit does not save Gemini's case, because as set forth in Defendants' motion, *see* Mot. 19–20, Gemini has not come close to alleging the essential elements of a claim for conspiracy to defraud.

*First*, there are no well-pled allegations of a "corrupt agreement." *Heinert v. Bank of Am. N.A.*, 835 F. App'x 627, 632 (2d Cir. 2020). The principal ground on which Gemini claims conspiracy is Defendants' execution of the Note, which Gemini asserts "made sense *only if its existence and terms would be concealed* from Genesis's creditors." Opp'n 10. But "a bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Gemini ignores entirely Defendants' legal authority holding that the fact that "a defendant's otherwise lawful activities may have assisted another in pursuit of guileful objectives is not a sufficient basis for a finding that he or she conspired to defraud," *LeFebvre v. N.Y. Life Ins. & Annuity Corp.*, 214 A.D.2d 911, 913 (N.Y. App. Div. 1995), and tellingly does not cite a *single* case accepting its contrived theory, *cf. Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 240 (2d Cir. 1999) (allegations of conspiracy sufficient where defendant affirmatively misrepresented accuracy of document), *cited at* Opp'n 10–11. This Court should not be the first.

Companies execute promissory notes all the time, and in this case, the Note plainly inured to the *benefit* of Genesis (not DCG), because it traded out an account receivable from a judgment-proof debtor for a comparable receivable from a solvent firm. Gemini's view that the Note was insufficient to provide adequate capital support to Genesis, even if true, is nothing more than a hindsight disagreement with business strategy, insufficient to plausibly allege fraud (much less conspiracy to defraud).

Seeking to bolster its frail allegations, Gemini asserts that the fact that Genesis allegedly

3

misrepresented the terms or effect of the Note in front of DCG employees is sufficient evidence of conspiracy. Opp'n 14–15. But this is just another way of trying to hold Defendants liable for failing to correct alleged misstatements by Genesis—an effort that fails as a matter of law, as explained by Defendants at length and unrebutted by Gemini. *See* Mot. 12–15. And once again, Gemini does not cite a single case holding that a failure to correct alleged misrepresentations is evidence of conspiracy (and such a rule would be patently irrational in any event).

Gemini's last two efforts at alleging conspiracy are by far its weakest. Gemini first asserts that an alleged phone call between DCG's COO and an unrelated Genesis depositor (Bitvavo) suggests a corrupt agreement, Opp'n 14–15, but the mere fact that a non-defendant DCG officer *repeated* allegedly misleading statements made by Genesis does not suggest an enterprise-wide conspiracy, *cf. Lippe v. Bairnco Corp.*, 230 B.R. 906, 919 (S.D.N.Y. 1999) ("[A] corporate officer's participation in a conspiracy must be specifically set forth.").[2] And finally, Gemini attempts to leverage its allegations about Mr. Silbert's October 2022 lunch with Mr. Winklevoss as evidence of a corrupt agreement, Opp'n 16, yet does not point to a single statement made by Mr. Silbert at that meeting relating to the terms or effects of the Note.

*Second*, Gemini has failed to allege an overt act. It points again to the execution of the Note and Mr. Silbert's meeting with Mr. Winklevoss, *see* Opp'n 17, but again, Gemini has failed to adequately allege that either of those episodes were executed "in furtherance of an agreement to commit unlawful acts," *Ritchie Cap. Mgmt., LLC v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 339 (S.D.N.Y. 2015) (quotation marks omitted), *aff'd*, 821 F.3d 349 (2d Cir. 2016). And

---

[2] Gemini also fails to offer any basis for its belief about the alleged content of the call, to which it was not a party. Gemini incorrectly asserts that it need not offer such a factual basis, *see* Opp'n 14 n.3, but courts in fact hold that allegations made on information and belief must be accompanied by a disclosure of the basis for such relief, *see G-I Holdings, Inc. v. Baron & Budd*, 2004 WL 1277870, at *2 (S.D.N.Y. June 10, 2004) ("Numerous district courts in this Circuit have required that the sources of information for fraud pleadings based on information and belief be disclosed." (collecting cases)).

Gemini does not dispute that a "[f]ailure to recognize or prevent fraud does not constitute an overt act," *Heinert*, 835 F. App'x at 632, meaning that any alleged failure of Defendants to alert Gemini to the alleged fraud (whether in a meeting or otherwise) is insufficient.

*Third*, Gemini does not adequately allege knowing and intentional participation by Defendants. *See* Mot. 21. Gemini does not dispute that "conspiracy requires the same allegations of actual knowledge as aiding and abetting." *Id.* at 20 (quotation marks omitted) (quoting *Heinert*, 835 F. App'x at 632). Additionally, under "New York law, malice and intent both to participate in the alleged conspiracy and to injure the plaintiff are essential elements in conspiracy actions." *In re Food Mgmt. Grp., LLC*, 380 B.R. 677, 704 (Bankr. S.D.N.Y. 2008).

Predictably, Gemini once again falls back on Defendants' execution of the Note as evidence of actual knowledge, at this point having relied on the mere existence of the Note as supposed evidence of virtually every element of conspiracy. Opp'n 23. But as explained in Defendants' motion—and unrebutted by Gemini—"bare[] allegation[s]" that Defendants "had or should have had . . . knowledge" are "plainly not sufficient." *Nat'l Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 147 (N.Y. App. Div. 1987). Gemini's simple assertion that Defendants just *must* have known about the alleged fraud is nothing more than a conclusion, not a factual allegation. And fatally undermining any remaining hint of knowledge is the fact that DCG pledged *$600 million worth of assets* as collateral to Genesis, all for the benefit of Gemini and its customers, at the same time Gemini asserts Defendants were embroiled in a fraudulent scheme. *See* AC ¶ 119; *see also* Mot. 12. Gemini does not even try to explain this fact.

As for intent—which overlaps with scienter—Gemini claims that Defendants "ignore the Complaint's allegations that Silbert knew that his statements were false." Opp'n 20. Simply asserting intent is not enough: Under the theory of recklessness (the sole theory Gemini pursues),

5

a plaintiff must plead "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) (quotation marks omitted). Executing a promissory note for the benefit of a subsidiary surely does not fit that bill. Gemini also points to Mr. Silbert's role as CEO of DCG, Genesis's parent company, but Gemini once again ignores the law, which holds that "the mere existence of a parent-subsidiary or affiliate relationship is not on its own sufficient to impute the scienter of the subsidiary to the parent or affiliate." *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 317 (S.D.N.Y. 2011). And a defendant's mere access to or familiarity with "information inconsistent" with the alleged representations is not sufficient in the absence of allegations specifically identifying *which* documents contradicted those statements and *how* the defendant supposedly accessed them. *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 28 (2d Cir. 2014).

*Finally*, Gemini's conspiracy theory is duplicative of its equally deficient aiding-and-abetting claim. *See* Mot. 19–20. Gemini says that dismissal for duplication is inappropriate where the aiding-and-abetting claim has been dismissed, Opp'n 17, but that is wrong: Courts dismiss conspiracy claims as duplicative even when the underlying aiding-and-abetting claim has been rejected too, *see Briarpatch Ltd. v. Phx. Pictures, Inc.*, 312 F. App'x 433, 434 (2d Cir. 2009). Gemini next submits that aiding and abetting has no "agreement" element and therefore the claims are not duplicative, *see* Opp'n 18, but if that were true, conspiracy claims would never be dismissed as duplicative, because they always involve the requirement of a corrupt agreement. Gemini also says the scope of conspiracy damages might be broader, *see id.*, but argues elsewhere that "all of the injuries alleged in the Complaint are properly understood to be a proximate result" of Defendants' alleged aiding and abetting, *id.* at 24–25.

**B.   Gemini Fails to Plead Any Actionable Misrepresentations by Defendants**

With respect to direct liability, Gemini no longer argues that Defendants "caused" Genesis

6

to engage in any of the alleged misconduct or that Defendants were under a duty to correct any misstatements.  *See* Mot. 12–15; *see also Sucesores de Don Carlos Nunez y Dona Pura Galvez, Inc. v. Societe Generale, S.A.*, 2023 WL 2712505, at *6 n.8 (S.D.N.Y. Mar. 30, 2023) ("Plaintiffs have conceded that point by failing to dispute it in their opposition.").  Instead, it admits that the Amended Complaint identifies just one alleged misrepresentation by Defendants to Gemini:  Mr. Silbert's October 2022 statements to Mr. Winklevoss that Genesis's loan book was complex and that difficulties unwinding the loan book were attributable to a timing mismatch.  Opp'n 19.

As demonstrated in Defendants' motion, Gemini fails to plead falsity—there are no well-pled allegations showing that Genesis's loan book was *not* complex or that Genesis did *not* need time to unwind it.  Mot. 10–11.  Gemini says that Mr. Silbert's statements were misleading by omission, *see* Opp'n 19, but "revealing one fact about a subject does not trigger a duty to reveal all facts on the subject," *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 407 (S.D.N.Y. 2020) (quotation marks omitted); *see also In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *12 (S.D.N.Y. Mar. 30, 2021) ("Defendants' failure to paint the fullest picture possible is not actionable . . . .").  Mr. Silbert's discussion of a "short-term" mismatch is similarly insufficiently pled as false.  Gemini does not plead that Mr. Silbert's comment expressly or impliedly referenced the Note—indeed, Gemini affirmatively pleads that he did not discuss the Note at all.  The allegation that Genesis's ongoing lending portfolio had any connection to the Note is assumed in Gemini's brief but has no factual predicate in the Amended Complaint.  And in all events, Mr. Silbert's subjective views of Genesis's "resources and capabilit[ies]" going forward are precisely the kinds of opinions that are "non-actionable" under New York law.  *Yablon v. Stern*, 161 A.D.3d 594, 594–95 (N.Y. App. Div. 2018).  Gemini contends that Defendants must identify Mr. Silbert's "plausible basis" for those beliefs, Opp'n 20, but that is incorrect—it is Gemini's burden to plead

the elements of its case. It has not done so.

Gemini's efforts to plead knowledge and scienter fail for all of the reasons outlined above. *See supra* pp. 5–6. The execution of a lawful promissory note is not indicative of an intentional fraudulent scheme, and merely proclaiming that DCG or Mr. Silbert had knowledge and intent does not make it so. That is particularly true in view of Gemini's inability (or unwillingness) to respond at all to the fact that DCG's pledge of $600 million in additional collateral would not "make sense," Opp'n 3, if DCG really thought Genesis's failure was imminent. Mot. 11–12.

### C. Gemini Fails to Plead Actionable Damages and Loss Causation

Gemini's opposition similarly fails to rebut Defendants' showing that Gemini's conjectural theories of damages and loss causation are not cognizable. Mot. 17–19.

Gemini does not deny that it seeks damages solely for litigation costs in lawsuits that arise out of its own alleged misconduct, including the sale of unregistered securities. *See* Mot. 18. Instead, it claims that customers' "motive to assert claims against Gemini" is greater as a result of Defendants' alleged conduct, and boundlessly leaps to the conclusion that Defendants are somehow liable for its defense costs. Opp'n 21. But a fraud plaintiff may recover only "the actual pecuniary loss sustained as the *direct* result of the wrong." *Starr Found. v. Am. Int'l Grp., Inc.*, 76 A.D.3d 25, 27 (N.Y. App. Div. 2010) (emphasis added) (quotation marks omitted). Defendants plainly are not "direct[ly]" responsible for Gemini's decision to sell (allegedly) unregistered securities or make (allegedly) false statements to its customers.

As for causation, Gemini urges that it has propounded a "straightforward causal theory," and then proceeds simply to recite the same chain of events it speculates in the Amended Complaint. Opp'n 21. Suffice to say, Gemini's bare hypotheses about a sequence of events far "beyond the first step" of causation does not pass muster. *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 10 (2010) (quotation marks omitted). Gemini incorrectly asserts that it need establish only

that the alleged misconduct "proximately caused *some measure of damages*." Opp'n 22 (emphasis and quotation marks omitted). But the case it cites concerned breach-of-contract damages, and the court found that "a speculative measure of damages in a breach of contract action does not justify dismissal . . . because nominal damages are available under New York law." *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, 2016 WL 205445, at *7 (S.D.N.Y. Jan. 15, 2016). That is not the law for fraud, where "[s]peculative or conjectural damages are not recoverable." 60A N.Y. Jur. 2d Fraud and Deceit § 181; *see also* Mot. 21.[3]

Finally, Gemini disputes any causal connection between FTX and Genesis's suspension of redemptions, *see* Opp'n 22, but the Amended Complaint tells a different story: "In mid-November, following the much-publicized collapse of the cryptocurrency exchange FTX, Genesis disclosed that it had financial exposure to FTX, and Genesis depositors began invoking their contractual rights to recall their loans." AC ¶ 8. Having drawn a direct connection in its Amended Complaint—and offering no other possible explanation for the redemption freeze—Gemini cannot disclaim that position now to salvage its claim. Gemini plainly has not carried its burden of adequately alleging that its "losses are due to the alleged fraud, rather than to intervening events." *In re Merrill Lynch & Co. Rsch. Reps. Sec. Litig.*, 568 F. Supp. 2d 349, 365 (S.D.N.Y. 2008).

## II. GEMINI FAILS TO PLEAD AIDING AND ABETTING FRAUD

Gemini's fallback theory of aiding and abetting fails for many of the same reasons as its claim for direct fraud, and for a few additional ones.

*First*, Gemini has not met the demanding standard for adequately alleging "actual knowledge" of fraud, for all of the reasons set forth above. *See* Mot. 21; *supra* pp. 5–6, 8.

---

[3] Gemini's causation theory is further defective insofar as Gemini in fact possessed the Note before Genesis's suspension of redemptions. Gemini strategically does not plead when it obtained the Note. *See* AC ¶ 59.

*Second*, Gemini fails to plead Defendants' substantial assistance in any fraud. Gemini falls back on its conclusory assertion that the Note was "tailor-made to facilitate Genesis's fraud," Opp'n 24, but does not point to anything that comes even close to establishing the "extraordinary motivation to aid the fraud" that is required where only an "ordinary course transaction[]" is at issue, *JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 257 (S.D.N.Y. 2005) (quotation marks omitted). Gemini cannot predicate substantial assistance on Mr. Silbert's alleged omissions, because he owed Gemini no duty to speak. *See Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 25 (S.D.N.Y. 2009), *aff'd*, 382 F. App'x 107 (2d Cir. 2010).

*Third*, Gemini fails to allege proximate causation. In opposition, Gemini sweepingly concludes, without more, that "all of the injuries alleged in the Complaint" were a result of the Note's execution. Opp'n 25. By now it should be clear that Gemini cannot will such facts into existence by fiat. Gemini's aiding-and abetting-claim therefore falls.

## III.  GEMINI'S INFORMAL REQUEST TO AMEND SHOULD BE DENIED

The Court should deny Gemini's informal request to amend. Gemini has already amended its pleading once, and elected to oppose Defendants' motion rather than seek leave to file a second, amended pleading. Further, Gemini has not identified the specific facts that would cure the defects identified in Defendants' motion. Gemini's only basis for amending is the incorporation of unsubstantiated allegations made in the NYAG's complaint, but allegations copy-pasted from another litigant's pleading are not entitled to a presumption of truth at the pleading stage. *See Amorosa v. Gen. Elec. Co.*, 2022 WL 3577838, at *1 (S.D.N.Y. Aug. 19, 2022).

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety, with prejudice.

Dated: November 3, 2023      Respectfully submitted,
        New York, New York

|  |  |
|---|---|
| Joshua M. Wesneski<br>WEIL, GOTSHAL & MANGES LLP<br>2001 M Street NW, Suite 600<br>Washington, DC 20036<br>Tel: (202) 682-7000<br>Fax: (202) 857-0940 | */s/ Jonathan D. Polkes*<br>Jonathan D. Polkes<br>Caroline Hickey Zalka<br>Stefania D. Venezia<br>Dylan L. Ruffi<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Tel: (212) 310-8000<br>Fax: (212) 310-8007<br><br>*Counsel for Defendants Digital Currency Group, Inc. and Barry Silbert* |